[Nos. 1105 and 1106, February 27, 1907.]

JAMES N. UPTON, Appellee, and Defendant in Error, v. SANTA RITA MINING COMPANY, Appellant and Plaintiff in Error.

SYLLABUS (BY THE COURT).

1. In adverse suits brought pursuant to R. S. U. S. 2326, an ordinary declaration in ejectment is sufficient to present all the questions involved between the applicant for patent and an adverse claimant; following Deeney v. Mineral Creek Milling Co., 11 N. M. 279.

2. In such suits, however, the rules governing ordinary ejectment suits are modified by C. L. 2290 which provides that mere prior possession shall not constitute a basis for re-

covery and by the Act of Congress of March 3, 1881, which requires that the defendant no less than the plaintiff shall recover on the strength of his own title.

3. In order therefore that the court may be advised of the nature of the suit so as to apply these exceptional rules, there should in addition to the ordinary allegations in ejectment be appropriate allegations showing the fact that such suit is designed as an adverse suit.

4. The complaint in the present cause examined and held sufficient for adverse suits.

5. In such a suit a verdict in the form "We the jury find the defendant guilty" is sufficient to answer all the purposes of the proceeding.

6. In such a suit the parties are upon proper request entitled to special findings upon questions relevant to the cause but in the absence of such request it is not error for the Court to fail to require findings of the jury.

7. In descriptions natural or artificial monuments ordinarily prevail over courses and distances.

8. A call in a description for "West" will be read "East", where such change is necessary to enable the survey to close upon the starting corner.

9. In case of a conflict in the calls of a description such elements of description will be preferred as are the least liable to mistake.

10. If the rejection of a call will reconcile all parts of the description and leave enough to identify the tract, such call will be rejected and the description thus preserved.

11. Where therefor a single call of description fixes the tract by course and distance from a common section corner as in Range Fourteen, when several other descriptive calls fix it by reference to known monuments and mining claims as in Range Twelve, the discordant element of description first named will be ignored and the description read as in Range Twelve.

12. Section 2332 R. S. U. S. providing that when parties have held and worked mining claims for the period prescribed by the local statute of limitations, such possession shall be sufficient to establish a right to patent in the ab-

sence of any adverse claim is to be construed in connection with the remaining federal mining statutes.

13. When so construed, its effect is simply to declare that possession for the statutory period is the equivalent of a valid location.

14. Possession for the statutory period under R. S. Section 2332 does not relieve the possessor from doing the annual assessment work required by R. S. Section 2324, and upon his failure to do such work in any one year, the land becomes subject to relocation notwithstanding he may have occupied it for more than the statutory period preceding such relocation.

15. Possession and working for the statutory period under R. S. Section 2332 when proved in the land office or before the Courts give the possessor the status of a valid locator, but testimony to prove such possession is immaterial where the party offering such testimony claims under a location duly made pursuant to law and there is no issue as to the original validity of such location, but simply as to whether he had forfeited it by failure to do the annual assessment for a given year.

16. Improvements placed upon one of a group of contiguous claims for the purpose of aiding in the development of all and tending to such result may be considered in determining whether the annual labor for a given year has been done upon any one of such group.

17. Before, however, such testimony can be considered in aid of any one claim there must be sufficient testimony as to the other claims to enable the jury to determine what proportion of such benefit is referable to the claim in question.

18. Tested by these rules, the court below did not err in charging the jury to disregard as an element in determining whether the annual work had been done the existence of a blacksmith shop and blacksmith implements found upon the claim in question placed there for the benefit of this and other claims.

19. C. L. Section 2286 which requires the locator of a mining claim to post a location notice "in some conspicuous place on such location" is supplemental to and not inconsis-

tent with the federal mining laws and is consequently valid; and a failure to comply substantially therewith renders the location void.

20. The mere fact however that the portion of the claim upon which such notice is posted may by mistake overlap or conflict with a preexisting claim does not invalidate the location. Such location is still good as to so much not in conflict.

21. A forfeiture of a mining claim for failure to do annual work can be established only upon clear and convincing proof of such default proved against the former owner by the party assailing his title.

22. Where, however, the owner has failed to make and file the proof of labor required by C. L. Section 2315, such owner is not entitled to invoke the rule of law last stated since Section 2315 places the burden of proof upon him to show that such work has been done according to law, and not upon his opponent to show that it has not been done.

Appeal from and Error to the District Court for Grant county before FRANK W. PARKER, Associate Justice. Affirmed.

WILLIAM B. CHILDERS and A. H. HARLLEE, for Appellants and Plaintiffs in Error.

Where special findings are irreconcilable with the general verdict, the former control the latter. Walker v. Railway Co., 7 N. M. 282, affirmed in 103 U. S. 593; Larkin v. Upton, 144 U. S. 619; Livingston County v. Morris, 71 Mo. 604; Newman v. Lawless, 6 Mo. 298; Haggin v. Lorenz, 15 Mont. 309, 39 Pac. 285; Tracey v. Harmon, (Mont.) 43 Pac. 501; Dorger v. LaSieur, (Utah) 33 Pac. 701; Northern Ry. Co. v. Jordan, (87 Cal.) 25 Pac. 273; Wilson v. Hoffman, 54 Mich. 246, 20 N. W. 37; Alexander v. Wilson, 69 Ala. 33; C. H. & L. Ry. Co. v. Clifford, 113 Ind. 460, 15 N. E. 524; Toogood v. Hoyt, 42 Mich. 609, 4 N. W. 447; 7 Ency. Pl. and Pr., page 328, and cases cited, page 329 and note.

"When lands are demanded, the description of them must be so certain that seisen may be delivered by the sheriff without reference to any description de hors the

writ." Atwood v. Atwood, 22 Pick. 287; Newman v. Lawless, 6 Mo. 298; Garvel Road Co. v. Moss, 92 Ind. 119; Lenninger v. Wenrick, 98 Ind. 596; Liggett v. Lozier, 133 Ind. 451, 32 N. E. 712, citing Indiana cases; College Corner & R. G. Road Co. v. Moss, 92 Ind. 19; Morris v. Giddens, (101 Ala.) 14 Southern 406; Note to Budd v. Brooks, 43 Am. Dec. 339; Langley v. Jones, 26 Md. 474.

Where there is a variance between the general description and courses and distances, the latter control. Haggin v. Lorenz, 15 Mont. 309, 39 Pac. 285; McCormick v. Huse, 78 Ill. 363; Pinkerton v. Ledoux, 3 N. M. 304.

The evidence cannot be looked to in determining the effect of a special finding or a general verdict. Cox v. Ratcliffe, (Ind.) 5 N. E. 5, citing Pennsylvania Co. v. Smith, 98 Ind. 42; McCraven's Heirs v. McGuire, 23 Miss. 100; Foster v. Wilson, 5 Mont. 53, 2 Pac. 310 and 311.

The complaint and the adverse must both state a conflict between the ground claimed by the plaintiff and by the defendant. The periods, sixty days, for filing the adverse in the land office and thirty days thereafter for bringing suit, are periods of positive limitations, which cannot be extended by the courts. Mattingly v. Lewisohn, 13 Mont. 508; Lalande v. McDonald, (Id.), 13 Pac. 347; Cronin v. Bear Creek Mining Co., 17 Mor. Min. Rep. 552, 32 Pac. 204; Wolverton v. Nichols, 119 U. S. 488, 7 Sup. Ct. 289, 30 L. Ed. 474; Mont Blanc Con. G. Min. Co. v. Debour, 61 Cal. 364; Marshall Silver Min. Co. v. Kirtley, 12 Colo. 410-415, 21 Pac. 492; Lily Mining Co. v. Kellogg, 74 Pac. 519; Steves v. Carson, 42 Fed. 822; 2 Lindley on Mines, Sections 738 and 756; Hunt v. Eureka Gold Min. Co., (Colo.), 24 Pac. 552.

"That where a person or association of persons and their grantors have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent in the absence of any adverse claims." R. S., Sec. 2332; 2 Lindley on Mines, Sec. 688; 420 M. Co. v. Bullion M. Co., 3 Sawyer, 634, 645, 11 Mor.

Min. Rep. 608; 420 M. Co. v. Bullion M. C., 9 Nev. 340, 1 Mor. Rep. 114; Harris v. Equator M. & S. M. Co., 8 Fed. 863; Altoona Quicksilver M. Co. v. Integral Quicksilver M. Co., 114 Cal. 100, 45 Pacific 1047; Anthony v. Jillson, 83 Cal. 296, 23 Pac. 410; Jones v. Prospect Mt. Tunnel Co., 31 Pac. 642; Risch v. Wiseman, 59 Pac. 1111; Glacier Mining Company v. Willis, 127 U. S. 471-481; Barringer & Adams on Mines, Secs. 317 and 568, and cases cited; Compiled Laws of 1897, Secs. 4014 and 2289.

Any person desiring to locate a mineral claim must post in some conspicuous place on such location, a notice in writing. Compiled Laws, 1897, Section 2286; 1 Lindley on Mines, Secs. 350 to 360; 1 Lindley, Chapter 1, beginning with Section 248.

The question of a true location of a boundary is always a matter of fact for the determination of the jury. While, as a general rule, monuments, natural or artificial, control, that nevertheless, it yields, whenever taking all the particulars of a deed or patent together, it would be absurd to apply it. Storz v. Burrage, 65 Pac. 162; White v. Luning, 93 U. S. 524; Barclay v. Howell's Lessee, 6 Peters, 498-510; Shipp v. Miller, 2 Wheaton 316; 4 A. & E. Enc. of Law, 2 Ed. 760, 761; also Canavan v. Dugan, 62 Pac. 971; Deeny v. Mineral Creek Milling Co., 11 N. M. 279, 67 Pac. 724, citing Haws v. Mining Co., 160 U. S. 303.

"Where a demurrer to a complaint for failure to state a cause of action is overruled, the defendant, by answering, does not lose his right to have the judgment on the verdict reviewed for error in overruling the demurrer." Teal v. Walker 111 U. S. 242.

What pleadings of adverse claimant should allege. 2 Lindley on Mines, 2d Ed., 1341, sec. 457, to 1357.

The special finding should be on all facts necessary to show the qualification of the successful party and his compliance with the law. 2 Lindley, secs. 763 to 766; Burke v. McDonald, 2 Idaho 646, 33 Pacific 49; Gwillim v. Donnellan, 115 U. S. 45, 50; Perego v. Dodge, 163 U. S. 160; Barringer & Adams on Mines, page 386, and notes on pages 389 to 414.

Upton v. Santa Rita.

"A forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law." Hammer v. Garfield Mining Company, 130 U. S. 291, 301; Belk v. Meagher, 104 U. S. 297, 26 L. Ed. 735; Johnson v. Young, 18 Colo. 625, 629, 34 Pacific, 173; Coleman v. Clements, 23 Cal. 245 247; Bishop v. Baisley, 28 Or. 119, 125, 41 Pacific 936; Oreamuno v. Uncle Sam M. Co., 1 Nev. 215, 218; 2 Lindley on Mines, Sec. 645, and authorities there cited; Walton v. Wild Goose M. & T. C., 123 Fed. 219; McCulloch v. Murphy, 125 Fed. 150 and cases cited; Note to McKay v. McDougall, 87 Am. St. Rep. 413; Callahan v. James, 74 Pacific 85.

The annual expenditure may be made either in labor or improvements put upon the claim itself, or upon one of a group of contiguous claims to which the particular claim belongs, or, in some instances, upon adjoining ground not included in any claim. Power v. Sla, 61 Pacific, 468; 2 Lindley on Mines, secs. 629-631; Smelting Co. v. Kemp, supra; Jackson v. Roby, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; Book v. Mining Co. (C. C.) 58 Fed. 106; Rev. St. U. S., Sec. 2324; Morenhaut v. Wilson, 52 Cal. 263; Renshaw v. Switzer, 6 Mont. 464, 13 Pacific 127; Wulf v. Manuel, 9 Mont. 286, 23 Pacific 723; Mattingly v. Lewisohn, 13 Mont. 508, 35 Pac. 111; Strasburger v. Beecher, 20 Mont. 143, 49 Pacific 470; Hammer v. Milling Co. 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964.

PERCY WILSON, for Appellee and Defendant in Error.

The court should refuse to set aside the general verdict unless the special findings upon all the material facts in issue, construed together, cannot be reconciled with it. Walker v. Railway Co., 7 N. M. 282; Walker v. Railroad Co., 165 U. S. 593; Larkin v. Upton, 144 U. S. 19.

If by the rejection of an obviously mistaken call in a description, a closed boundary marking a definite piece of land will result, such rejection will be made. Barclay v. Howell, 6 Peters 498; Preston v. Bowmar, 6 Wheaton

580; Morrow v. Whitney, 95 U. S. 551; Bartlett Land Co. v. Saunders, 103 U. S. 316; White v. Luning, 93 U. S. 514.

Location **confers merely** a conditional estate, subject to be defeated by failure to do the annual work. Section 2324 U. S. R. S.; McCowan v. McLay, 16 Mont. 234, 40 Pac. 602; Cleary v. Skiffich, 28 Colo. 362, 65 Pac. 59.

The locator of a mining claim may lay some of the lines of his location, even the whole of one of the end lines thereof, within the limits of a prior patented claim and notice posted upon one is properly placed within the rule that it must be posted in some conspicuous place upon such location. Lindley on Mines, 2nd Ed., secs. 363a, 365.

An ordinary complaint in ejection is sufficient in these adverse cases. Deeney v. Mineral Creek Milling Co., 11 N. M. 279, 67 Pacific 724.

Where ejectment is the proper action, the verdict must be in the form prescribed in ejectment.

"The burden of proof to establish a forfeiture rests upon him who asserts it." McCulloch v. Murphy, 125 Fed. 147 and 150; Walton v. Wildgoose, etc. Co., 125 Fed. 209.

The amount of the work done for all the claims must equal in value the aggregate of what would be done on them if each was worked separately, where it is claimed that work done was a part of a system of development work on this and other unpatented claims owned in common. Chambers v. Harrington, 111 U. S. 350 and 353.

### STATEMENT OF THE CASE.

This is a suit on an adverse brought by Upton against the Santa Rita Mining Company. The form of the complaint including the description of the premises in dispute is essential to a proper discussion of the questions here raised, and is accordingly set forth in full. It is, omitting the caption, as follows:

"Plaintiff for cause of action against defendant alleges:

1. That plaintiff is and at all times herein mentioned was a citizen of the United States.

2. That defendant is a corporation organized and existing under and by virtue of the laws of the State of New Jersey.

3. That on the second day of September, 1904, plaintiff was and ever since has been and now is, entitled to the possession of that certain land and premises, situate in the Central City Mining District, County of Grant and Territory of New Mexico, known and described as the Slip Lode Mining Claim.

4. That on the third day of September, 1904, defendant afterwards entered into parcel of said Slip Lode mining claim, being all that portion thereof which is intersected by the exterior lines of the James Pinder lode mining claim, which said portion so intersected is described as follows, to-wit: Beginning at the northwest corner of said Slip lode mining claim, whence the corner common to sections 27, 28, 33 and 34 of Township 17 south of Range 14 west of the New Mexico principal base and meridian bears north 44 deg. 0 minutes west, 988.8 feet distant; thence north 85 deg. 21 minutes west, 1422.1 feet to corner No. 5 of said James Pinder lode mining claim; thence south 28 deg. 57 minutes east, 376 feet to intersection with south side line of said Slip lode mining claim; thence south 63 deg. 13 minutes west, 490.89 feet to angle corner in south side line of said Slip mining claim; thence south 83 deg. 52 minutes west, 872.8 feet to southwest corner of said Slip Lode mining claim, thence north 28 deg. 57 minutes west, 600 feet to the place of beginning; containing 16.217 acres, and unlawfully witheld the posession thereof from plaintiff, to the damage of plaintiff in the sum of five thousand dollars.

5. That on the third day of September, 1904, defendant filed in the United States Land Office at Las Cruces, New Mexico, its application for a United States patent for said James Pinder lode mining claim, and thereafter did publish in the Silver City Independent, a weekly newspaper published in Silver City, New Mexico, a notice of said application, the first insertion therein of said notice being in the issue of Tuesday, the sixth day of September, 1904.

6. That on the second day of November, 1904, plaintiff filed in said United States Land Office his adverse claim and protest against the allowance of mineral entry on said application, and that said adverse claim and protest is now pending in said United States Land Office.

7. That this action is brought in support of said adverse claim and protest.

Wherefore plaintiff prays judgment against defendant; for the possession of said parcel of said. Slip Lode mining claim above described, which is by defendant withheld from the plaintiff as aforesaid; for the sum of five thousand dollars, plaintiff's damages as aforesaid; for the costs of this action, and for such other and further relief as to the court shall seem meet in the premises."

The defendant demurred generally, and this being overruled, it answered denying right of possession in plaintiff, and further specifically denying that it entered into or was in the possession of the premises above described, repeating such description *in haec verba*. The answer also sets up the statute of limitations, alleging continuous adverse possession and enjoyment of the premises since July 15, 1881. The answer admitted the defendant's application for patent, but denied that plaintiff filed the adverse as alleged or that such adverse if filed showed the nature of the boundaries and the extent of the alleged conflict. A reply was filed putting in issue the new matter alleged in the answer. A trial was had upon the issues thus made, a large amount of testimony was introduced and there was a general verdict by which the jury "find the defendant guilty" and a special finding to the effect that the James Pinder Lode Mining Claim in controversy and claimed by defendant "is situate in Township Seventeen South Range Twelve West."

The defendant thereupon filed its motion for a new trial upon numerous grounds and further moved for judgment in its favor upon the ground of inconsistency between the general verdict and the special finding in that the complaint and adverse and also the plat attached to the adverse and consequently the general verdict each describe the Slip Lode as being in Range *Fourteen* West, whereas

the special finding of the jury places the alleged conflict-
ing claim, the James Pinder, in Range *Twelve*. The
plaintiff at this point moved for leave to amend his com-
plaint so as to "properly and fully describe the prem-
ises" sued for. A motion in arrest of judgment was also
filed by defendant alleging as grounds thereof insuffic-
iency of the description of the property in the com-
plaint to justify a judgment, and that no cause of action
was stated by the complaint. Each of these motions, three
by the defendant and one by the plaintiff, was denied and
a judgment was thereupon entered adjudging plaintiff
to be entitled to and awarding him possession of the prem-
ises sued for. The description in the judgment follows
that embodied in the complaint as above set forth. From
this judgment, an appeal was taken and also a writ of error
sued out from this court, which have been heard as one
case.

### OPINION OF THE COURT.

POPE, J.—(after making the foregoing statement of
the facts).—The assignments of error are quite numerous
but may be classified generally as embodying seven con-
tentions: That the court erred (1) in overruling
defendant's demurrer to the complaint; (2) in refusing to
sustain defendant's motion in arrest of judgment; (3) in
overruling defendant's motion for judgment in its favor
upon the special finding; (4) in refusing to admit evi-
dence offered by the defendant to establish the defense of
the statute of limitations, and in refusing to give the jury
instructions as to this defense; (5) in refusing to submit to
the jury any issue as to the location of the West side line of
the Santa Rita Patented Mining Claim No. 33, and in with
drawing from the jury all testimony upon this issue, and
in refusing any instructions based upon defendant's theory
as to the location of this line; (6) in charging the jury in
instruction No. 31 that they could not consider any black-
smith shop or blacksmith implements in estimating the im-
provements on the Pinder for the year 1897, and (7) in
refusing defendant's requested instruction Number Twelve
as to the character of proof necessary to sustain plain-
tiff's case.

The first allegation of error is that this complaint is insufficient to sustain an action of this character, and the verdict is likewise insufficient for the purpose intended. As to the first, it is said the complaint should allege in detail all of the facts by which plaintiff initiated rights upon the public domain under the mining laws, his qualifications and that of his predecessors to receive title and his right to receive patent at the hands of the Government, and that a complaint in the statutory form as here is inadmissibly concise and incomplete.

We might find it sufficient upon this particular question to cite the recent decision of this court in Deeny v. Mineral Creek Milling Company, 11 N. M. 279, wherein upon a full consideration of the authorities it was held by this court, speaking through Mr. Justice Parker, that an ordinary declaration in ejectment is sufficient in cases of this character. As however, the reasoning of that case is assailed and the judgment of this court is now invoked as to whether the conclusion there reached should be adhered to, we have re-examined the matter and as a result find no reason to question the soundness of that decision as applied to the present case. The present suit is brought pursuant to R. S. U. S. 2326, which is as follows:

"Where an adverse is filed during the period of publication it shall be upon oath of the person or persons making the same and shall show the nature, boundaries and extent of such adverse claim, and all proceedings except the publication of notice and making and filing of the affidavit shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction or the adverse claim waived. It shall be the duty of the adverse claimant within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession and prosecute the same to final judgment and a failure so to do shall be a waiver of his adverse claim."

It will be noted that the suit is to be filed to determine simply "the question of the right of possession." The statute makes no attempt to confer any new jurisdiction upon any court (1 Snyder on Mines 709). Indeed so

far as the state courts are concerned Congress would be without power to do so (Altoona Co. v. Integral Co., 114 Cal. 100). Congress however has full power to determine and regulate how the public domain shall be given into private ownership. For the purpose of determining who, should have its patents, it could have retained to its land officers the right to pass on conflicting claims to mining locations just as it has retained to those officers the power to determine contests and protests under the desert and homestead acts. Recognizing, however, the intricate questions to be encountered in adjusting mining rights and realizing that the determination of such rights could be best left to the courts and juries of the vicinage, these being as a rule versed in mining questions and in some instances practical miners, it by Section 2326 confided to the local tribunals the determination of the rights of conflicting claimants. The courts to which such controversies were referred were to be courts "of competent jurisdiction", i.e., courts which already had jurisdiction of similar controversies. By this statute contestants were referred to this jurisdiction with the assurance that pending the determination of the right of possession no action would be taken in the land office. Under this arrangement of comity, the filing of this suit is considered by the land office the beginning of the action (De Garcia v. Eaton, 22 L. D. 16) and there the land department stops and waits. It does not concern itself with the matters of pleadings and procedure. Having entrusted the controversy to the local courts, it leaves to these the determination of the right of possession according to their own practice. It even leaves to them to determine whether the suit is being prosecuted with the "reasonable diligence" required by Section 2326 (Richmond Co. v. Rose, 114 U. S. 576). It imposes only one condition. It says:

"While in the ordinary suits within your jurisdiction the defendant may be awarded judgment where the plaintiff fails to make out his case, in cases of this character confided to you it is required that no affirmative judgment be awarded a defendant unless upon sufficient

proof, and in case right of possession is not established by either party, then your jury shall so find."

As above indicated, however, this is not a limitation upon the jurisdiction of the state court, for that would not be within the power of Congress. It is simply a declaration by Congress that the Land Office will not recognize any finding for a defendant unless it be upon proof of right of possession; and any local court which proceeds in the defiance of this condition simply imposes upon the litigants the probable penalty that the land office will not regard its conclusions thus reached in disregard of the act of Congress.

Thus all the finding that the Land Department asks from the court is: Who, upon the merits, has the right of possession? All other findings are superfluous and are an invasion of the jurisdiction of the land office, for "it remains in every case for the land department to determine all other questions touching the right of patent" (Clipper Mining Co., 33 L. D. 667). This was clearly pointed out by Mr. Justice Lamar, then Secretary of the Interior, in Alice Placer Mine, 4 L. D. 314, a decision twice referred to with approval by the Supreme Court of the United States (Perego v. Dodge, 163 U. S. 160, and Clipper Co. v. Eli Co., 194 U. S. 233) where it is said:

"The judgment of the court is, in the language of the law, to determine the question of the right of possession. It does not go beyond that. When it has determined which of the parties litigant is entitled to possession, its office is ended, but title to patent is not yet established. The judgment of the court ended the contest beween the parties and determined the right of possession. The judgment roll proves the right of possession only. The applicant must still make the proof required by law to entitle him to patent. Branagan v. Dulaney, 2 L. D. 744. The sufficiency of that proof is a matter for the determination of the Land Department. It follows, therefore, that further hearing may, if deemed necessary, be ordered for the purpose of ascertaining with greater certainty the character of the land or whether the conditions of the law have been complied with."

. It is there further said:    "

"Does the judgment of a court as to which of two
litigants has the better title to a piece of land bind the
commissioner to say without judgment or contrary to his
judgment, that the successful litigant has complete title
and is entitled to patent under the law? The usual re-
sult following a favorable judgment in a court under
Section 2326 of the Revised Statutes is, I doubt not, the
issue of patent in due time, but in such case the final pass-
ing of title is not on the judgment of the court independent
of that of the commissioner but is on the judgment of the
latter pursuant to that of the former and on certain evi-
dence supplemental to that furnished by the judgment
roll."

Land decisions bearing on this point are quite numer-
ous.

Thus, in Branagan v. Dulaney, 2 L. D. 744, it is said:

"The contest ended in the court, each party may secure
a patent for whatever portion of the lode he by such judg-
ment is found to rightly possess. If he rightly po-
ssesses it all, he takes all; if a portion only he takes that
portion only and his opponent in like manner takes what-
ever he is found to rightly possess. Each party must
still make the proof required by law. The judgment roll
proved the right of possession only."

So in Clipper Mining Co. case, 34 L. D. 403, it is
said:

"The court determines only the question of the right
of possession as between the litigating parties—that one
has acquired by virtue of his mining location a right of
possession which enables him to prevail against the other
or that neither has established such right. It cannot by
its judgment establish in either a right of possession of
binding force and effect as against the United States, since
the government is not a party to the suit and a right thus
effective depends finally upon the character of the land
involved."

And so in the Supreme Court of the United States
referring to Alice Placer Mine, supra, it is said:

"It must be remembered that it is the question of the

Upton v. Santa Rita.

right of possession which is to be determined by the courts and that the United States is not a party to the proceedings. The only jurisdiction which the courts have is of a controversy between individual claimants." Perego v. Dodge, *supra.*

In considering this question, we do not find it necessary to go to the length suggested by certain California decisions which apparently hold that there is no connection whatever between the Land Office proceeding and that in the local courts. Thus in Altoona Co. v. Integral Co., 114 Cal. 100, it seems to be held that suit pursuant to an adverse need not be commenced within thirty days after adverse and that whether the form of verdict "would answer the purpose of the parties in the land office" is a matter of no concern to the local courts. So in the recent case of Gruwell v. Rocca, 141 Cal. 417, it is said:

"Where a contest in the land office of the United States of the right to purchase mining property from the federal government under the mining laws is referred to the State Courts to determine 'the question of the right of possession', the state courts must determine that question by the state laws as though no contest were pending in the land office and does not concern itself whether or no its judgment can be used in the land office."

We are of opinion, that while the local procedure is to be followed, the adverse suit is in an important sense at least, a continuance of the proceedings in the land office (Woolverton v. Nichols, 119 U. S. 485) and that as a practical question a compliance with what the Act of Congress says must be done and ascertained is necessary on the part of the local courts to insure any respect for their findings from the land department.

Having in view the relative positions of the land department and the local courts as defined by the authorities just cited two questions are to be determined, is the complaint in this case and are the judgment and verdict based upon it each sufficient to enlighten the Land Office upon the matters contemplated by Section 2326 as amended by the Act of March 3, 1881? We are of opinion that each is. The federal law requiring simply a test of the right of

possession, and the form of action not being prescribed "any action at law or a suit in equity would lie as either might be appropriate under the particular circumstances, an action to recover possession when the plaintiff is out of possession and a suit to quiet title when he is in possession." Perego v. Dodge, 163 U. S. 165.

That the action of ejectment is sufficient in the eyes of the land department is evidenced by De Garcia v. Eaton, 22 L. D. 16, an appeal from the Las Cruces Land Office in this Territory, where it was held by Secretary Hoke Smith that the filing of a declaration in ejectment in the District Court was under the New Mexico statute such a commencement of proceedings as to suspend the jurisdiction of the Department under Section 2326.

So, in Tonopah Co. v. Douglas, 123 Fed. 940, it is said (citing with approval and following the Nevada decisions):

"The Supreme Court in construing the state statute has repeatedly held that it is not necessary for a plaintiff to set out specifically the character of his own title or the alleged title of the defendants; that it is always sufficient simply to allege that plaintiff is the owner and in possession of the property describing it and that the defendants are unlawfully asserting a claim thereto adverse to him." And in Campbell v. Taylor, 3 Utah 325, it was held that "a complaint which contains a general allegation of ownership is sufficient, although the facts constituting an alleged abandonment and forfeiture by the defendant are not pleaded."

The federal law requires a test of the right of possession by appropriate action, and ejectment being the proper action in this Territory where the plaintiff is "legally entitled to the possession of the premises" (C. L. Sec. 3160) and ejectment being the very form prescribed by our statutes for actions of this character (Sec. 2290) it follows that a complaint in ejectment such as this is sufficient. The allegation that "plaintiff is entitled to the possession" of the premises when read in the light of the prohibition in Compiled Laws Section 2290, is sufficient to require proofs of all the facts necessary to a finding adequate for land office purposes. We in-

cline to the view, however, that in actions of this kind it is necessary also that the complaint should snow a pending application for patent in the land office and that the suit is brought as the result thereof. We believe this to be necessary for two reasons, *first,* unless there be such allegations the case will not be brought within the terms of C. L. Section 2290 and the court will be without information upon which to enforce the special rule of evidence contained in that section to the effect that prior possession shall not be considered as a basis of recovery; and *second,* unless shown by such allegations to be connected with a land office proceeding, the court will lack information upon which to require under the Congressional Act of March 3, 1881, a finding in favor of neither party, in case of a failure of a proof of title by both; for as above pointed out and as shown in Murray Co. v. Hanover, 66 Pac. 764, and Iba v. Central Association, 5 Wyo. 355, "the ordinary rule that plaintiff must recover upon the strength of his own title and that otherwise the defendant is entitled to a judgment does not govern, as the matter to be determined is that either plaintiff or defendant has the title or that neither of them has it." The present complaint however, alleges fully the pendency of the land office proceedings and is therefore not subject to the objection of not fulfilling this requirement. Upon a reconsideration of the Deeney case in the light of subsequent authority, we are of opinion that with the modification last suggested it is a correct statement of the law in this Territory and is accordingly adhered to. The demurrer to the complaint was properly overruled.

This brings us to the next question, is the verdict sufficient for the purpose of R. S. Sec. 2326. In other words does it show right of possession in the plaintiff? The verdict finds "the defendant guilty." This is in the ancient form of verdicts in ejectment (Warvelle on Ejectment. Sec. 474) and was a finding both that the plaintiff was entitled to the possesion of the premises described and that defendant at the date of the suit unlawfully withheld them from plaintiff. Hawley v. Twy-

man, 24 Grat. 516; Kershner v. Kershner, 36 Md. 309; Allard v. Lamirande, 29 Wis. 502. This in our opinion is sufficient to answer all of the purposes of the proceeding and to give to the land office the information necessary under R. S. 2326 and the act of March 3, 1881. It shows that the plaintiff has the right of possession, it shows that the defendant has not, so that there is no doubt as to which of the parties is as between them entitled to patent.

It is urged by the appellant, however, "that the government is interested in knowing before issuing its patent to a party that he is a citizen, that he has discovered a vein, that he has performed the development work and that he has complied with the law", and to this proposition the case of Burke v. Mc Donald, (Id.) 33 Pac. 49, is cited. In that case a verdict finding "the title to the right of possession of the area in conflict described in the complaint to be in favor of the plaintiffs" was held insufficient upon the ground that it did not show that plaintiffs had such right by reason of a compliance with the absolute requirements of the law or that they had it as against the government or any but the defendants. The court says in that case:

"It amounts to a declaration that as between the parties to the action, the plaintiff showed the better right and should prevail, which in Golden Co. v. Cable Co., 12 Nev. 320, was held to be the rule, but this is insufficient since the Act of March 3, 1881, providing that if the title is in neither the Court should so find."

The case of McGinnis v. Egbert, 8 Colo. 55, is also cited as authority. In that case it was held that a verdict "We, the jury do find a verdict for the defendant in the above case" was insufficient because it carried no information whether it was returned for the defendant because he had established his title to the lode in the manner or because the plaintiffs had failed to establish their title. It was held by the court that it should have stated which of these alternatives was true. For the same reasons it was held in Manning v. Strehlow, 11 Colo. 455, that a

verdict "We, the jury find the issues for the plaintiff, that he was in possession of the Mountain Boy mining claim at the time of the commencement of this action and is now entitled to the possession thereof" was insufficient.

We are of the opinion, however, that these cases state the rule too strictly. The case of Burke v. McDonald, *supra,* for example which finds fault with the verdict because it does not show plaintiff's rights against the government, overlooks the fact that the judgment roll is not intended to furnish a complete basis for patent. As is pointed out in the authorities above and as was said by Secretary Noble in the Apple Blossom Placer case, 14 L. D. 641:

"A decree of the court in adverse proceedings determines the right of possession as between the parties but does not deprive the Land Department of the requisite authority to ascertain whether there has been a due compliance with the law and the land is of the character claimed by the mineral applicant."

The further contention in Burke v. McDonald that the verdict did not show plaintiff's rights against any but the defendant is equally untenable. We do not understand that it is the province of an adverse suit to do more than this. The proceedings preliminary to patent are proceedings in rem. Any one who fails to adverse within the statutory period is forever barred. In a suit therefore between the applicant and the adverse claimant, all who have not adversed being out of the controversy, the latter by the process of elimination is reduced to two and a verdict according plaintiff the right of possession leaves no one but the government to be reckoned with. A finding therefore as between the plaintiff and the defendant exhausts the field of controversy. The same observations apply to the Colorado cases.

But whatever may be the weight of these decisions as authority elsewhere, they must yield in this jurisdiction to the authority of Bennett v. Harkrader, 158 U. S. 441. In that case, which was an adverse suit, it was contended that the following verdict: "We the jury find for the plaintiff"

was insufficient.    The court in response to this suggestion.
said:

"The verdict in this case does not state in terms that
the plaintiff is entitled to the possession of the property de-
scribed in the complaint or any part thereof; neither does
it state the value or duration of his estate in the property.
Hence it is insisted that the verdict was irregular and that
no judgment should be rendered thereon and in support
thereof the cases of Jones v. Snider, 8 Oregon 127, and
Pensacola Ice Co. v. Perry, 120 U. S. 319, are cited.    We
do not think the defect, if it be one, is sufficient to vitiate
the judgment.    Where the complaint alleges that the
plaintiff is entitled to the possession of certain described
property, which is unlawfully detained by the defendant
and the possession of which the plaintiff fails to recover, a
general verdict for the plaintiff is a finding that he is en-
titled to the possession of all the property described in the
complaint."

This decision was quoted with approval in the later
case of Malory v. Adsit, 175 U. S. 289, and in our judg-
ment is controlling of the present  question.

Upon a full consideration of the matter we are of the
opinion therefore that the verdict was sufficient to answer
the purposes of the proceeding. We do not desire to be
understood, however, as denying the right to  special
findings upon any material matter in a case such as
this.    Such findings are permittted by the special statute
governing cases of this character (C. L. Sec. 2291).    In
the present case, however, request was made for only one
special finding which was given by the Court and that as we
shall presently see was upon an entirely different matter.

It is further urged that the complaint and the judg-
ment which follows it are insufficient for the purposes of
the suit because the description of the property given in
each fails to close and because the land office will thus
be unable to make a survey.    The recital is of a tract be-
ginning at the northwest corner of the Slip mining claim
and after giving various courses and distances the descrip-
tion shows finally that the last course comes to the "north-
west corner of said Slip lode mining claim, the place of

beginning". Upon running out the courses and distances it is found that they fail to close, due to the fact that the first course reads "North 85 degrees, 21 minutes *West*" instead of East. We deem the rule to be well settled however that upon such a state of facts East may be substituted for West in a description, so as to bring the survey back to the starting point, and this upon the familiar principle that the course, as an element of description, yields to the starting monument, a more certain element. White v. Luning, 93 U. S. 514, 524, and cases cited in 8 Rose's Notes 1007; Hofman v. Beecher, 12 Mont. 497.

It is further contended, however, that there is a fatal conflict between the special finding and the general verdict as to the location of the land in controversy, in that the special finding fixes the *locus* in Range Twelve West, whereas the general verdict, following the complaint, fixes it in Range Fourteen West; that in the presence of this conflict the special finding must control and in that event the land referred to in the evidence is a tract entirely different from that described in the complaint and the adverse. The rule undoubtedly is, as contended by defendant, that the special finding controls the general verdict. This is a matter not only of decision in this Territory, Walker v. Rwy. Co., 7 N. M. 282, s. c. 165 U. S. 593; Larkin v. Upton, 144 U. S. 619; Davenport v. City of Roswell (decided this term) but of statute, C. L. Section 2993. The finding places the premises in Township Twelve and this is the actual location under the evidence. If therefore the general verdict places it in Township Fourteen, there is a conflict and the finding being controlling, the case must at least be dismissed for lack of pleading to sustain the result, or in other words because the suit has been brought for the wrong land. But does the general verdict place the land in Range Fourteen? This in turn requires a consideration of the description of the complaint, for the general verdict is simply a finding of right of possession of the property as alleged. The description in the complaint has only one call that ties the property to Range *Fourteen,* that being the recital that from the beginning

corner, the common corner to Sections 27, 28, 33 and 34 of Township Seventeen South of Range *Fourteen* West bears north 44 degrees 0 minutes West, 988.8 feet. As against this element of description there is the statement that the land in controversy is a parcel of the Slip lode mining claim; that it is so much thereof as is intersected by the exterior lines of the James Pinder lode .mining claim; that its beginning point is the northwest corner of the Slip mining claim; that its first course ends at corner number 5 of the James Pinder lode mining claim; that. its next line intersects the south side line of the Slip claim; that its next course goes to an angle corner in the same line of that claim.; and thence to the southwest corner of the Slip, and then to the northwest corner of the Slip, being the beginning point. It will thus be seen that at least seven descriptive calls tie the premises to the Slip and James Pinder claims. Both of these are, as we know from the testimony, well known claims. Their locus is definitely fixed, being tied by their location notices to patented claims Santa Rita No. 33 and Santa Rita No. 57. In addition the undisputed testimony shows that each of them is in Range Twelve. We thus have at least seven descriptive calls fixing the premises in Range Twelve as against one fixing it in Range Fourteen. The contention of the defendant apparently is that we should discard the seven and cling to the one. We find no warrant of law for so doing, however. The controlling consideration is of course the ascertainment of the intention of the parties. We can not give effect to the use of the figure fourteen instead of twelve, a mistake easily made, as against the use many times repeated of descriptive calls about which there could have been no mistake. The scrivener might very well have made an error in a figure, but it is incredible that he could have been mistaken in tieing to the location of the Slip and Pinder claims. He must have meant the latter and not the former to control. Just as in the conflict between a number written out and in figures the latter will be rejected and the former control because the less liable to mistake, so as between these two conflicting elements of de-

scription we adopt the more certain one. In reaching this conclusion we simply follow the well recognized principle that where the entire description of the grant defines with intelligible certainty the premises intended to be conveyed a conflicting addition to the description will not render it void for uncertainty, but such conflicting element will be rejected as false. 4 A. & E. En. of Law (2nd Ed.) 797, and cases cited. As was said in the much cited case of White v. Luning, 93 U. S. 524, where the court went to the extent of discarding as false, calls for known objects and accepting instead calls for courses and distances:

"It is true that as a general rule monuments, natural or artificial, referred to in a deed control, on its construction, rather than courses and distances; but this rule is not inflexible. It yields whenever taking all the particulars of the deed together it would be absurd to apply it. For instance, if the rejection of a call for a monument would reconcile other parts of the description and leave enough to identify and render certain the land which the sheriff intended to convey, it would certainly be absurd to retain the false call and thus defeat the conveyance."

We hold therefore that the description of the complaint, discarding the descriptive element which we deem palpably a mistake, shows by reference to known objects that the premises are in Section Twelve; and that the general verdict finding the issues on the complaint is to the same effect. There is thus no conflict with the special finding. We apprehend that the land department if called upon to enforce the judgment rendered in this case would have little difficulty in finding the premises in question.

It is further urged that the court erred in refusing to permit proof as to defendant's adverse possession of the premises in question. The case was one of conflict between the James Pinder claim located in 1881 and the Slip lode located on much of the same premises in 1898, after an alleged failure of the James Pinder owner to do his assessment work for the preceding year. The defendant, the owner of the Pinder claim, sought to prove on the

trial by the witness McGregor that the defendant has possessed and worked this claim for more than ten years preceding the Slip location. The record is not clear that the rejection of this testimony so far as tendered, was properly covered by exception, but considering the point preserved we are of opinion that the testimony was properly rejected. The contention as to its admissibility is based upon Section 2332 R. S. which provides as follows:

"That where a person or association of persons and their grantees have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may be situated, evidence of such possession and working of the claim for such period shall be sufficient to establish a right to a patent in the absence of any adverse claim."

The contention seems to be that if the defendant held and worked the Pinder claim for ten years—the statutory period for adverse possession in New Mexico—his title became, by virtue of the statute above quoted good as against the world except the government and the claim was not subject to relocation in 1898, notwithstanding he may have failed to do his annual labor for 1897. We are unable to find any warrant in law for this assumption. An examination of the decisions both of the land department and of the courts will, we believe, clearly demonstrate this.

It was originally held by the land department (Stewart v. Rees, 21 L. D. 446) that the possession of a mining claim for the statutory period under Section 2332 R. S. entitled the claimant to patent therefor in the absence of any intervening adverse claim even though after making application for patent he failed to make the requisite statutory expenditure thereon, but this doctrine was later repudiated and Stewart v. Rees directly overruled in Barlage v. Russell, 29 L. D. 40, where Section 2332 was very fully discussed by Secretary Hitchcock and it was said:

"One purpose of Section 2332 was to lessen the burden of proving the location and transfers of old claims concerning which the possessory rights were not controverted but

the record title to which in many instances had been destroyed by fire or otherwise lost because of the insecurity and difficulty necessarily attending its preservation during the early days of mining operations upon the Pacific coast and vicinity.  As originally enacted, the section was intended primarily if not solely, to apply to placer claims, for the patenting of which there had previously been no provision, and to which class all or nearly all of the earlier claims belonged, the establishment of record title to which under the original locations and through succession of transfers was especially difficult and oftentimes impossible for the reasons just stated.  The section was not intended as enacted nor as now found in the Revised Statutes, to be a wholly separate and independent provision for the patenting of a mining claim.  As carried forward into the Revised Statutes it relates to both lode and placer claims and being *in pari materia* with the other sections of the revision concerning such claims is to be construed together with them and so as, if possible, that they may all stand together, forming a harmonious body of mining law.  Section 2325 points out with some detail the steps necessary to secure patent, requiring among other things an application under oath, notice thereof, proof of the expenditure of $500.00 upon the claim of the claimant or his grantors and payment for the land.  None of these requirements is mentioned in Section 2332 but it by no means follows, upon the simple filing by a claimant of the proof indicated in the latter section, without compliance with any of the requirements of Section 2325, that patent must be issued to him.  Properly construed with Section 2325 and other sections of the Revised Statutes upon the same subject, it is believed that the main purpose of Section 2332 was to declare that evidence of the holding and working of a mining claim for a period of time equal to the time prescribed by the local statute of limitations for mining claims shall be considered as sufficiently establishing the location of the claim and the applicant's right thereunder 'in the absence of any adverse claim.' "

It was further said in this case that by this decision it was certainly not intended to dispense with the re-

quirements of Section 2325 whereby the existence of an adverse claim is made known to the land department and due protection is accorded to adverse rights."

This decision is followed and the principle it announces is reiterated in Brady v. Harris, 29 L. D. 426, and Gaffney v. Turner, 29 L. D. 470. In all of these decisions it is plainly indicated that while the department has no concern with matters of annual expenditure on a mining claim—that being a matter exclusively for the courts as between contending claimants—Section 2332 does not relieve parties from the obligation to do annual assessment work or to comply with any of the other requirements of law antecedent to patent imposed upon the holder of a valid location.

Thus in Capital No. 5 Placer Claim, 34 L. D. 462, it was said:

"Section 2332 simply discloses the kind of proof that shall be sufficient where the stated conditions exist, to establish the possessory right in an applicant for patent in the absence of any adverse claim."

The same construction is given in McGowan v. McLay (Mont.) 40 Pac. 602, where it is held that Section 2332 gives the right to patent to an applicant who has held for the statutory period provided no one files an adverse claim in the land office and does not give him the right to a claim merely because he has worked it for the statutory time without any adverse claim being made.

Likewise, in Cleary v. Skiffich, 28 Cal. 362, it was said, referring to Section 2332:

"The object of this section was to permit a party applying for patent to make a *prima facie* case before the land office by proving that the claim upon which the application for patent was made, had been in possession of himself and grantors for a period equal to the statute of limitations of the jurisdiction in which the claim was interposed. In other words, proof of possession for the statutory period in the absence of any adverse claim, was to be taken by the land department as equivalent to an establishment in detail of all the facts necessary to constitute a valid location. The statute therefore is not available in an action

brought in support of an adverse against an application for patent; for its language necessarily implies that possession in the applicant for the statutory period is of no avail as against an adverse claim based upon a conflicting location, except it might be in such action that proof of such possession would be sufficient upon which to presume that all steps necessary to effect a location of the claim adversed had been taken."

The court goes on to hold, however, that this was immaterial as the testimony was undisputed, that the defendant there (as here) had originally a valid location.

We believe that the true rule on the subject is succinctly stated in Altoona Co. v. Integral Co., 114 Cal. 100, where it is said that "working for the statutory period before the adverse right exists is equivalent to a *location* under the Act of Congress" and in Belk v. Meagher, 104 U. S. 279, 287, where it is declared to be the "equivalent of a valid location." In other words a party who has done such work occupies the status and possesses the rights of a locator, no more and no less. As in the case of a holder of a valid location he has good title as against all but the government so long as he does the annual labor. As is said by Judge Hallett in Harris v. Equator Company, 8 Fed. 863:

"A presumption is indulged that the location was regularly made in the first place and the party is allowed to remain so long as he shall comply with the conditions on which he holds the estate."

When such party comes to apply for patent, his occupancy must be proven under certain regulations of the department (2 Lindley 1714) and when so proved, if there be no adverse claimant, they are sufficient as the statute says "to establish a right to a patent." But in this he stands on the same basis as the holder of a location whose application is uncontested. The holder of such a possession no less than the holder of a location must possess the necessary qualifications as to citizenship. Anthony v. Jillson, 83 Cal. 296. He must prove, as well as the locator, the possession of $500.00 worth of labor or improvements before he can secure patent. Capital No. 5 Placer Claim,

34 L. D. 462, *supra*. Pending his right to patent he must likewise perform the annual assessment required of the locator, for R. S. 2324 requiring such work "until patent shall be issued" makes no exception in his favor, and in default of this his claim is subject to relocation.

Nor do we find anything to the contrary of these views in the cases cited by the defendant. In Risch v. Wiseman, 59 Pac. 1111, the record showed specifically that the party relying upon the adverse possession had done $100.00 worth of work each year, so that having a possesion equal to a location his title was necessarily impregnable to any attack except the government's. So in Glacier Mining Co. v. Willis, 127 U. S. 271, there is no reference to or any attempted discussion of Section 2332 nor any determination of the question of whether assessment work must be kept up. The same observations apply to 420 Mining Co. v. Bullion Co., 9 Nev. 240. We are clear, therefore, that it was no defense against a forfeiture for failure to do assessment work for 1897 that the holder of the claim had been in possession of it for ten years prior to 1897 and that the court did not err in rejecting this testimony and in refusing to give instructions based on the theory that such was a defense.

It is further urged that the court erred in refusing defendant's requested instruction 13 in the form requested. The instruction as requested was as follows:

"The jury is also instructed that in estimating the amount and value of labor performed and improvements made on the Pinder claim, they should take into consideration any road, building and also any blacksmith shop or blacksmith implements built, made or placed upon the claim, if any, provided they further find from the evidence that such road, building, blacksmith shop or blacksmith implements were placed upon the claim for the purpose of aiding in the work on and development of the claim and did tend to aid in the working and development of the claim."

The court gave this instruction, but added the following:

"But if you find from the evidence that any black-

smith shop and blacksmith implements were so placed on said claim for the use of men doing the assessment work on other claims owned by the defendant, as well as, on the Pinder claim, then, you will not be at liberty to estimate the same as a part of the improvements on the Pinder for the year 1897."

We are of the opinion that the modification of the instruction was proper under the facts of this case. The instruction as given allowed the defendant the benefit of the improvements named, including the blacksmith shop, if done or made for the Pinder claim exclusively. The testimony, however, indicated that the blacksmith shop was for the joint benefit of a group of claims. There was no testimony to show how many claims it was to be used for nor any other basis from which could be deduced the result as to what proportion of the improvement was attributable to the Pinder. There being no data given the jury from which this conclusion could be reached, the court was right in withdrawing the matter from the consideration of the jury. While it is undoubtedly the law that improvements put upon one of a group of contiguous claims to which the particular claim belongs and for the common development of all, are to be considered in determining whether improvements for a given year have been made, the utmost that can be credited to any one claim on this account is its fair proportion of the common benefit. There being nothing in the evidence from which the jury could deduce this proportion the court was justified in debarring them from the field of speculation and confining them to the realm of fact.

A further assignment of error is that the court erred in withdrawing from the jury all testimony as to the location of the true west side line of Santa Rita No. 33, a patented claim immediately east of plaintiff's Slip location, and in refusing to give certain instructions embodying defendant's theory as to the effect of this testimony. A large part of the record in this case is made up of testimony as to where this side line was located. Plaintiff's witnesses indicated the original monuments to be 100 feet farther east than the defendant's witnesses. The relevancy claimed

for this arises from the fact that according to the Slip loca-
tion, the location notice of that claim was placed upon its
east side line, and at the west side line of the Santa Rita
No. 33 as located on the ground by plaintiff. If, therefore,
the contention of the defendant as to the location of the
west line of Santa Rita No. 33 be well taken plaintiff's loca-
tion notice was 100 feet within patented ground belonging
to the claim last named, and if, as contended, that
fact invalidates the location then the court erred in with-
drawing from the jury the testimony as to the location of
the Santa. Rita No. 33; otherwise not.

The Territorial statute upon this subject (C. L. Sec.
2286) provides that any person desiring to locate a min-
ing claim must among other things post "in some con-
spicuous place on such location a notice in writing
stating thereon the name or names of the locator."
These regulations being supplemental to and not inconsist-
ent with the federal mining laws are valid, and a failure to
comply substantially with them renders the location void.
Lockhart v. Willis, 9 N. M. 344; s. c. sub. nom. Lock-
hart v. Johnson, 181 U. S. 526; Deeney v. Mineral Creek
Co., 11 N. M. 279.

The requirement being that such notice shall be
posted "in some conspicuous place on the location," was
it satisfied in this instance? We are of opinion that the
testimony whether viewed from plaintiff's or defendant's
standpoint is to the effect that the posting was within
the Slip claim as laid out. The position seems to be, how-
ever, that because a part of that location is (upon de-
fendant's view of the evidence) within Santa Rita No.
33 and because the location notice is upon that part, there-
fore the notice is not upon the location within the mean-
ing of the statute. We do not concur in that view.
Granting that the Slip lode partially overlaps No. 33,
that fact goes not to the locus of the Slip claim, but
to its ultimate validity. The Slip claim was no less located
as contended because ultimately a part of it may be found
to be improperly upon another claim. The Slip location
notice is no less upon such location because later it may
be found that that portion of the Slip conflicts with

Upton v. Santa Rita.

another location. The question of whether a notice is within a location is to be determined by the boundaries of that location as laid out, not by the boundaries as they may be reduced by the subsequent ascertainment of conflict with patented land. It is to be determined as of the date of the original location, not of a subsequent date. In announcing this position we have not overlooked the fact that the authorities are unanimous to the effect that a mining claim without a discovery point is void, and that if such discovery be located in the first instance upon the land of another or if subsequent to location they be lost to the locator by the patenting of that portion of his claim to another, his whole claim is lost. 1 Lindley on Mines, Sec. 338; Gwillim v. Donnellan, 115 U. S. 45; Miller v. Gerard, 33 Pac. 69.

The distinction between that and the present case, however, is readily seen. There can be no mining claim without a discovery for that constitutes the very basis of the title. If therefore the discovery be upon the land of another, any portion of the claim outside of such lands can derive no validity from the discovery within such lands for *non constat,* but that the lands without are totally lacking in mineral in place. A patent issued for them upon a discovery within the lands of another might result in alienation of the public land without any discovery to support it. So if subsequent to his location a party permits the portion of his claim containing his discovery to be taken away from him by another's unadversed application for patent, he is left with part of his claim but with no discovery to support it and the claim is thus lost. The posting of a location, however, is not the basis of the title. It is simply a provision of law by which in connection with the subsequent record the world may have notice that the land described is being claimed as a mining location. We see no reason why such notice posted within the claim is ineffectual simply because that part of the location may through inadvertence or otherwise overlap another claim. We must not overlook the fact that as stated in Deeney v. Mineral Creek Co., *supra,* no appreciable time intervenes between discovery and the posting of the location notice

under our statute. In many instances the boundaries of adjoining claims are doubtful by reason of destruction or obliteration of monuments and in such instances without accurate survey such boundaries cannot be definitely ascertained. To hold that because through honest mistake the small portion of the location upon which the notice is posted overlaps an adjoining claim, therefore the whole claim is void, is to declare that a miner must carry with him at the very start a skilled surveyor in order to be certain that his location is valid. We do not believe this to be within the spirit of the mining laws which have ever held that in the matter of location notices the court will take a liberal and not a narrow view. Erhardt v. Boaro, 113 U. S. 527; 1 Lindley on Mines, Sec. 335; Gird v. Calif. Oil Co., 60 Fed. 531; Donahue v. Meister, 88 Cal. 121.

Nor do the views here announced overlook the settled principle that a location held by patent or by prior location is property in the highest sense and that no rights upon it can be initiated by trespass. We hold, however, not that a conflict with an adjoining claim by a subsequent locator confers any right as against such prior claim, but that as to the portion of the mining claim lying without such claim the location is not rendered void by the mere fact that the notice may be upon such patented or previously located ground. As above pointed out it is none the less within the lines of the location as made and that is all the statute requires. The precise point here considered seems never to have been considered by the courts, but in the case of Perigo v. Erwin, 85 Fed. 904, the facts were not dissimilar. That was an adverse suit in the Circuit Court of the United States for the district of Utah, and it was contended, because the northeast stake of the Star claim had been placed upon the adjoining Gopher patented claim and because a portion of the latter claim was included within the Star claim, (although the locator intended to claim only that portion of the premises not in conflict with the Gopher) that therefore the Star claim was void. The similarity of that and the present case is apparent when it is recalled that this suit does not claim any area within the Santa Rita No.

33 as located by defendant and the location notice of the Slip claim, so far from claiming any territory within Santa Rita No. 33, expressly makes the West boundary of that claim its east boundary, thus in terms disclaiming any intention of invasion. In the case last cited the court overruled the contention that the Star location was void and referring to Belk v. Meagher, 104 U. S. 279, says:

"In this case no claim is made to the land included in the Gopher. No claim was so made when the location of the Star became an accomplished fact on its second discovery. Considering the location as then made, no act necessary to it can be construed into a trespass, unless it be the adoption of the staking of the claim which included a portion of the Gopher, and a placing on that claim of one of the stakes. To hold that such a trespass invalidates a location with respect to land not trespassed on would render titles to unpatented mining claims most insecure. While the mining laws of the United States require that a location shall be so marked on the ground that its boundaries can be readily traced, they do not provide for a maintenance of such marking. If a location be once validly made, the stakes marking it may disappear, and nothing be left to identify the ground to any one other than the locator, without invalidating the claim. If thereafter another qualified locator bases a location on a discovery of a vein within the first claim, not then subject to relocation, he gains no right, because he has discovered no vein on the land of the United States open to exploration, but if having discovered a vein on the land so open to exploration, he unwittingly places one or more of his stakes on the land already claimed there seems no reason to avoid his claim by reason of the mistake."

And so in West Granite Co. v. GraniteCo., 7 Mont. 355, it was contended because the marking of the boundaries of the lode there in controversy was by stakes set for corners on four adjoining claims and not on the claim itself, that therefore the location was invalid because "not distinctly marked on the ground" as required by Section 2324 R. S. U. S. Considering this contention, the court said:

"All that the statute requires, in our opinion, is that

the land should be so marked upon the ground that the boundaries can be readily traced. This does not mean that the marks shall be upon the actual ground included within the mining claim but that they may be upon the ground adjoining, near enough to readily designate the boundaries. It was certainly never intended that a slight mistake in the setting of stakes should invalidate the location. All that was intended is that a person seeking to make a subsequent location could go into the ground referred to, and from the marks made find the boundaries of the claim."

The court in this case distinguishes Hanswirth v. Butcher, 4 Mont. 307, where the claim had been held invalid because the boundaries marked a claim two thousand feet in length and thus five hundred feet in excess of the statute, by saying:

"But in that case the stakes were set beyond the limits fixed by the statute. In this case they were set within the statutory limits but on adjoining claims."

The applicability of this case to the present case is discerned when it is recalled that here the location notice if upon the neighboring Santa Rita No. 33 was also within the located boundaries of the Slip claim.

The case of Doe v. Tyler, 73 Cal. 21, also, in our opinion, very strongly sustains the position here taken. In that case the court says:

"The principal question in the case relates to the validity of Stroughton's location. The court below held the location invalid, because all but one or two monuments erected to mark its boundaries were placed over upon adjoining claims. Stroughton made his location in the night time. He was told by one Tucker that the ground was vacant and advised to locate upon it. He went out with Tucker and marked off the claim, extending in length from the Invincible to the Occidental, and having a width of about two hundred feet on its north end, and of a little more than that at its south end. He erected a monument at each of its four corners and at about the center of each of its end lines. He also placed a notice of location on the monument at the center of the south line.

The northeast corner monument was over on the Thunderer claim, the northwest one was on the Veto claim, the center one on that end was on one of the Occidental claims, and the southeast and southwest ones may have been slightly over on the Thunderer and the Veto. It seems to be admitted that the location would have been a good one if all the ground covered by it had been vacant, as then it would have been so marked out that its boundaries could be readily traced. But it is insisted that when Stroughton placed his monuments upon adjoining claims, which were held under valid locations, he was a trespasser and could acquire no rights by such trespassing; that his acts were void and that he could claim nothing by reason of the monuments so placed; that the parcel of land in controversy was not so marked on the ground that *its* boundaries could be readily traced, and therefore his attempted location was wholly invalid. If this be so, then it must follow that if the locator of a mining claim should happen through mistake or otherwise, to place some of the monuments necessary to mark out his boundaries upon another claim, though they might be over the line only a yard or a rod, still his location must wholly fail. We do not think that this is or ought to be the law. It is familiar in mining districts that claims have often been found to overlap one another to a greater or less extent. In such cases the question of the ground covered by the two locations has been, which location was prior in time and superior in right; and it has never been held, so far as we know, that either of them must wholly fail because of the conflict. On the contrary, in so far as the ground taken was vacant, each location, if properly made in other respects, has been considered to be valid and sufficient."

We are of the opinion that these decisions which deal with the location of monuments are equally applicable to the matter of the situation of the location notice. In our judgment, therefore, the court did not err in withdrawing from the jury the immaterial issue as to the west boundary of Santa Rita No. 33.

It is finally contended that the court erred in modifying defendant's instruction No. 12, by striking out the

last clause thereof. This instruction as requested was as follows:

"The jury is further instructed: That if they believe from the preponderance of the evidence that the defendant, or its predecessors in title, the original locators of the claim, or any of those holding under them and through whom the defendant claims, did and performed all the other acts and things necessary to make a valid location of the Pinder claim prior to the year 1898, and that the defendant performed labor or made improvements on said claim to the value of $100.00 in the year 1897, and that the plaintiff's claim, the Slip lode, was located in 1898 by the locator thereof upon the ground that the rights of the defendant under its location had been forfeited for failure to perform labor, or make improvements in the year 1897 to the value of $100.00 then the burden of proving such failure to perform labor and make improvements to said amount, and to establish said forfeiture by reason of such failure, is upon the plaintiff, and such forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have performed the work or made the improvements to the amount required by law."

The court struck out the words "and such forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have performed the work or made the improvements to the amount required by law," giving the remainder, and this action is assigned as error. The proposition stricken out is undoubtedly a correct statement of abstract law. In a similar case in the Supreme Court of the United States, it was said (Hammer v. Garfield Mining Co., 130 U. S. 301):

"A forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law."

This is but a statement of the general law of forfeitures applied to the matter of mining claims. Maxwell v. Cunningham, 50 W. Va. 298; Goldberg v. Brauschi, 146 Cal. 178; McCulloch v. Murphy, 125 Fed. 147; Loeser v.

Gardiner, 1 Alaska, 641 (1902). Further, that such an instruction is proper for a jury is distinctly held by the Circuit Court of Appeals for the Ninth Circuit in Walton v. Wild Goose Co., 123 Fed. 209, where an instruction in the precise language here requested of the court was given.

We do not however consider these decisions applicable to the present facts in view of our local statute. It is provided by C. L. Sec. 2315 that the owner of an unpatented mining claim may make and file with the county recorder proof of labor under oath containing certain details and that such affidavit when so made and filed shall be *prima facie* evidence in his favor of the facts therein stated. It is further provided, however, as follows:

"The failure to make and file such affidavit as herein provided shall in any contest, suit or proceedings touching the title to such claim, throw the burden of proof upon the owner or owners of such claim to show that such work has been done according to law."

This statute is unusual, New Mexico and Idaho being as pointed out by Mr. Lindley, "Lindley on Mines, 2nd. Edit. Sec. 636," apparently the only jurisdictions having such a law. As is said by that very thorough author:

"Ordinarily the burden of proof rests with the party charging a forfeiture to show that the work has not been performed by the previous locator. In Idaho and New Mexico, where there is a failure to file the proof of annual labor, it would seem that this rule is modified and the burden is shifted. We cannot see any objection to this class of state legislation. The several states have a right to define the nature, degree and effect of evidence within reasonable limits, and we do not think these provisions unreasonable."

In this case the proof shows that the holder of the Pinder claim made and filed an alleged proof of labor for 1897. But this when tendered in evidence was upon objection rejected by the court as not made in conformity with Section 2315. A comparison of it with the statute convinces us that the court below was correct in so holding.

Indeed that ruling is not questioned here. In legal effect, therefore, there was a failure by the owner of the claim to make and file the statutory proof and this under the statute threw upon it and not upon plaintiff the burden of proof, that "such work had been done according to law."

We think therefore that the court was more than liberal to the defendant in giving the first portion of the instruction, which places the burden of proof upon the plaintiff when the law places it upon the defendant. We are further of the opinion that the court was for this reason justified in refusing to give the portion of the instructions stricken out. Had the defendant complied with the statute as to making its proof of labor it would probably have been entitled to this instruction, but its failure to take this very simple precaution for the protection of its rights imposed upon it and not upon its adversary the burden of proof. We hold therefore that there was no error in this ruling of the court.

The judgment is accordingly affirmed.