[No. 1403.   December 23, 1911.]
JOHN H. McKNIGHT, Appellee, v. EL PASO BRICK
COMPANY, a Corporation, Appellant.

SYLLABUS.

1. The judgment of the U. S. Land Department, holding
appellant's application for patent void because the officers
of the local land office were without jurisdiction, is binding
in this case.

2. A final receipt of mineral lands issued upon a valid
application for patent, vests the purchaser with an equitable
title to the land and so segregates it from the public do-
main.

3. Even though a final receipt or the equitable title
thereby attained may have been the result of fraud and
therefore voidable, yet, until avoided it will be valid and
existing.

4. The cancellation of a mineral patent does not of it-
self render the ground embraced by it subject to location.

5. The decision of the trial court that the final receipts relied upon by appellant were void, nullities and of no effect, was correct.

6. The proof of annual labor prescribed by C. L. 1897, sec. 2315, would inure to the benefit of the locator filing the same in any kind of action in which it was material to establish the performance of such labor.

7. If owner of mining claim will not file affidavit of proof of labor, it places upon him the burden of showing that he has complied with the law, such compliance being necessary to the maintenance of his estate.

8. The mere statements that the appellant had performed annual labor was prima facie proof, unless it was further shown by what persons the labor was performed.

9. Ex parte affidavit was worth nothing as evidence generally unless it complied with the statute.

10. Finding of court below will not be disturbed if made on substantial evidence.

11. When the burden by non-compliance with the statute was placed upon the appellant it could have been shifted or met by proof either of the annual labor done at the proper time or work done before the location of appellee. The proviso of the statute calls for an affirmative showing by the original locator.

Appeal from the District Court for Dona Ana County, before FRANK W. PARKER, Associate Justice.

HAWKINS & FRANKLIN, HOLT & SUTHERLAND for Appellant.

Entries of land segregate the lands so entered from the public domain until such entries are finally canceled. 1 Land Dec. 362; Witherspoon v. Duncan, 4 Wall. 218; U. S. Rev. Stat., secs. 2325, 2290; St. Paul M. & M. R. R. Co. v. Forseth, 3 Land Dec. 446; Van Gesner v. U. S., 153 Fed. 46; 31 Land Dec. 482; Germania Iron Co.

McKnight v. Brick Co., 16 N. M. 721.

v. James, 89 Fed. 811; James v. Germania Iron Co., 107 Fed. 605.

The entry was not void. Wisconsin Central R. v. Forsythe, 159 U. S. 61; Johnson v. Towsley, 13 Wall. 72; Shepley v. Cowan, 91 U. S. 330; Quinby v. Conlan, 104 U. S. 420; Doolan v. Carr, 125 U. S. 618; Lake Superior Ship Canal Co. v. Cunningham, 155 U. S. 354; U. S. v. Winona & St. Paul Co., 67 Fed. 955; New Dunderberg Min. Co. v. Old, 79 Fed. 602; Folz v. Railway, 60 Fed. 316; King v. McAndrews, 111 Fed. 864; Witherspoon v. Duncan, 71 U. S. 218; Smelting Co. v. Kemp, 104 U. S. 218; Simmons v. Wagner, 101 U. S. 260; Knight v. U. S. Land Assoc., 142 U. S. 211; Hastings Railroad Co. v. Whitney, 132 U. S. 363; Whitney v. Taylor, 158 U. S. 85; Parsons v. Venske, 164 U. S. 91; Brown v. Gurney, 201 U. S. 184; Murray v. Polglaise, 43 Pac. 505, 59 Pac. 439; Noonan v. The Caledonia Gold Mining Co., 121 U. S. 393; Kendall v. San Juan Mining Co., 144 U. S. 658; Diller v. Hawley, 81 Fed. 657; Lavagnino v. Uhlig, 198 U. S. 443; Farrell v. Lockhart, 210 U. S. 142; Costigan Mining Law 312.

Original locations by appellee were invalid. Belk v. Meagher, 104 U. S. 284; Brown v. Gurney, 201 U. S. 184; Wills et al v. Blain et al, 4 N. M. 378.

Affidavit of annual labor. C. L. 1897, sec. 2315; Upton v. Santa Rita Mining Co., 14 N. M. 96; Greenleaf's Lessee v. Birth, 5 Peters 132; U. S. v. Homestake Min. Co., 117 Fed. 481; Walton v. Railway, 56 Fed. 1006; National Loan and Investment Co. v. Rockland Co., 94 Fed. 335; Payne v. Wilson, 146 Fed. 488; Birmingham Ry. & Elec. Co. v. Wildman, 24 So. 548, Ala.; Jaffray v. Thompson, 21 N. W. 659, Iowa; Montgomery v. State, 45 So. 879, Fla.; Goodall v. Norton, 92 N. W. 445, Minn.; Bristol v. Warner Exec., 19 Conn. 17; Rowan v. Chenoweth, 38 S. E. Rep. 544, W. Va.; Walden v. Sherburne, 15 Johnson 408; 5 Taunt. 245; Union Iron Works v. Union Naval Stores Co., 47 So. 652, Ala.; Bell v. Davis et al, 3 Cranch. C. C., 4 Fed. Cas. 1249; Bank v. Darden, 18 Ga. 318; Anderson v. Pollard Co., 62 Ga. 47; Lewin v. Dille, 17 Mo. 68.

Although a document is introduced to prove a particular fact or for a particular purpose, it becomes substantive evidence in the cause and may be used by the adverse party for other purposes. 17 Cyc. 465, Evidence; Reeves v. Brayton, 15 S. E. 658, S. C.; Winants v. Sherman, 3 Hill 72, N. Y.; Kelly v. Dutch, 2 Hill 105; Sill v. Reese, 47 Cal. 340; Sears v. Starbird, 20 Pac. 549, Cal.; 4 Enc. Ev. 842; Raymond v. Nye, et al, 5 Metc. 151, Mass.

Boundaries did not close or meet and such boundaries could not be traced either from notices or from any markings on the ground. Seidler v. Lafave, 4 N. M. 371; Gleeson v. Mining Co., 13 Nev. 462; Brown v. Levan, 46 Pac. 661, Idaho; McIvres Lessee v. Walker, 9th Cranch 173; Finley v. Williams, 9 Cranch 164; Pollard v. Shively, 5 Col. 309; Lindley on Mines, secs. 375, 382.

Proof that appellant had not resumed labor on claims was necessary. U. S. Rev. St., sec. 2324; 2 Lindley on Mines, secs. 645, 651; Hammer v. Garfield, 130 U. S. 291; Emerson v. McWhistler, 65 Pac. 1036; Power v. Sla, 61 Pac. 468, Mont.; Belk v. Meagher, 104 U. S. 279.

Incumbent upon appellee to show that he was the owner of a valid and subsisting location of the lands in dispute, one which entitles him to possession against the United States, as well as against another claimant. Upton v. Santa Rita Mining Co., 14 N. M. 96; Murray Co. v. Hanover, 66 Pac. 764; Iba v. Central Association, 5 Wyo. 355; Gwillim v. Donnellan, 115 U. S. 45; Brown v. Gurney, 201 U. S. 184; Jackson v. Roby, 109 U. S. 440; Perego v. Dodge, 163 U. S. 160; 2 Lindley on Mines, sec. 763; Cleary v. Skiffich, 65 Pac. 59, Colo.; Kirk v. Meldrum, 65 Pac. 633; McWilliams v. Winslow, 82 Pac. 538, Col.; Lozar v. Neill, 96 Pac. 343, Mont.

WADE & WADE and EUGENE S. IVES for Appellee.

Burden to prove that assessment work had been done was upon appellant. Upton v. Santa Rita Mining Co., 14 N. M. 96; 1 Enc. P. & P. 334; 2 Wigmore on Ev.,

secs. 1384, 2113; in re Murray, 41 La. Ann. 1109; St. Louis & S. F. Ry Co. v. May, 115 S. W. 900; Henderson v. Givens, 16 Ala. 261; Chesapeake Bank v. Swain, 29 Md. 483; Abbotts v. Pearson, 130 Mass. 191; Greenleaf's Lessee v. Birth, 5 Pet. 131; U. S. v. Homestead Mfg. Co., 117 Fed. 481; Sill v. Reese, 47 Cal. 340; C. L. 1897, sec. 2315; Succession of Murray, 7 So. 126; 17 Cyc. 52; Providence G. M. Co. v. Burke, 57 Pac. 641; 2 Lindley on Mines, sec. 636; 1 Lindley on Mines, sec. 249.

Original location notices of appellee were sufficiently definite. 27 Cyc. 574; Seidler v. Lafave, 5 N. M. 44; Farmington Gold Mining Co. v. Rhynney Gold and Copper Co., 58 Pac. 832; Tiggeman v. Mrzlak, 40 Mon. 19; Morrison v. Reagan, 8 Idaho 291; Hammer v. Garfield M. & M. Co., 130 U. S. 2991; Upton v. Larkin, 7 Mont. 449; 27 Cyc. 574; 1 Lindley on Mines, secs. 381-383; Kinney v. Fleming, 58 Pac. 723; Providence G. M. Co. v. Burke, 57 Pac. 641; Bramlett v. Flick, 23 Mont. 95; Upton v. Santa Rita M. Co., 14 N. M. 96.

Burden of proof upon appellant to show resumption of work. 2 Lindley on Mines, sec. 645; Little, Dorith & Co. v. Arapahoe & Co., 30 Colo. 431; Sherlock v. Leighton, 9 Wyo. 297; Hall v. Kearney, 18 Col. 505; Power v. Sla, 61 Pac. 468; McCormick v. Baldwin, 105 Cal. 284; Honaker v. Martin. 11 Mont. 91.

Final receipt issued was ineffective to segregate land from public domain pending adjudication as to its validity. Benson M. & S. Co. v. Alta M. & S. Co., 145 U. S. 463; Germania Iron Co. v. James, 89 Fed. 811; Brown v. Gurney, 201 U. S. 184; Murray v. Polglase, 17 Mon. 455; Adams v. Polglase, 23 Mon. 401; Adams v. Polglase, 32 Land Dec. 477; Noonan v. Caledonia Gold Min. Co., 121 U. S. 393; Roy Lode, 1 Brainard 173; Dobbs Placer Mine, 1 L. D. 565; Gunnison Crystal Mining Co.; 2 L. D. 722; Meyer et al v. Hyman, 7 L. D. 336; Moss Rose Lode, 11 L. D. 120; Colomokas Gold Mining Co., 28 L. D. 172.

The rule that invalid agricultural entries segregate the land until cancellation is not inconsistent with the principle that the fact of segregation depends fundamen-

tally upon the fact of an interest in the property existing
in a third party. 21 Stat. Large 141; Hodges v. Colcord,
193 U. S. 192.

Entry of appellant was void ab initio. Polk v. Wen-
dal, 9 Cranch. 87; Minter v. Crommelin, 18 How. 87;
U. S. v. Winona & St. P. R. R. Co., 67 Fed. 955; New
Dunderburg Mining Co. v. Olds, 79 Fed. 602; U. S. v.
Northern Pac. R. R. Co., 95 Fed. 869; King v. McAnd-
rews, 111 Fed. 864; Knight v. U. S. Land Ass'n., 142 U.
S. 211; McCracken v. Flanagan. 127 N. Y. 493; Hastings
etc. R. R. Co. v. Whitney, 152 U. S. 363; Whitney v.
Taylor, 158 U. S. 85; Noonan v. Caledonia Mining Co.,
121 U. S. 393; Kendall v. San Juan Silver Mining Co.,
144 U. S. 658.

Pleadings, proof, and proceedings sufficient to sus-
tain finding of trial court. 1 Enc. P. & P. 802; Daven-
port v. Ladd, 38 Minn. 545; Althouse v. Town of James-
town, 91 Wis. 46; Brown v. Gurney, 201 U. S. 184; Kirk
v. Meldrum, 65 Pac. 634; McWilliams v. Winslow, 82
Pac. 528; Goldberg v. Bruschi. 31 Pac. 24.

Locators were dummies. Gird v. Cal. Oil Co., 60
Fed. 531; Cook v. Klomos, 164 Fed. 529; Rev. St. 2331.

## STATEMENT OF FACTS.

This is a suit brought by the appellee against the
appellant in support of an adverse claim and contest filed
by appellee in the land office at Las Cruces, New Mexico,
against an application for patent previously filed in such
office by the appellant for the Aluminum group of placer
mining claims, consisting of the International, containing
about 132.22 acres; the Aluminum, containing about 111.-
64 acres; the Hortense, containing about 150 acres, all lo-
cated in Dona Ana county, New Mexico, in which adverse
proceeding the appellee claims to be the owner of five pla-
cer mining claims, known respectively as the Agnes, the
Lulu, the Lynch, the Tip Top and the Aurora claims, each
consisting of about twenty acres, and therein alleged to be
in conflict with certain of the area embraced within the
Aluminum and Hortense claims, as part of the group for
which application for patent had been made by appellant.

The pleadings were as follows: On January 2nd, 1909, appellee filed his complaint alleging citizenship; that the appellant was a corporation organized under the laws of the State of Texas and doing business within the territory of New Mexico; that the appellee on September 12, 1908, after a discovery of mineral upon unappropriated mineral lands of the United States subject to location and purchase, and by reason of such discoveries and divers locations made and maintained upon such lands, was and still is entitled to the possession of the mining locations claimed by him and above referred to; that the appellee had dispossessed him thereof; the filing by the appellant in the land office on November 25th, 1908, of its application for patent for such Aluminum group of mining claims and the giving of notice by the Register of the Land Office of such application for such patent; that the appellant wrongfully set up and alleged that it was the owner and in possession of such group of mining claims; that the appellee on the 30th day of December, 1908, and during the sixty days period of publication of the notice of the application for patent, had filed, as required by law, his protest against such application for patent; that proceedings on such application in such land office had been stayed to wait the determination by the court of competent jurisdiction of the right of possession to the land claimed by appellant and that such suit was brought to determine such right of possession; the appellee further alleged that the Hortense and Aluminum placer claims of the appellee were void, because the appellee had, he alleged, failed to discover any mineral thereon prior to the locations made by appellee upon the same ground, and, by reason of the failure of the appellant to conform its claim to the public surveys of the United States, and alleged that if said Hortense and Aluminum claims ever had any validity or legal existence, the appellee and its grantors failed to perform the annual labor for the years 1904 and 1905, and each thereof, and thereby forfeited any rights they might have had in such claims and did not resume possession of the work upon the same at any time prior to the acquirement of the appellant and his grantors of that portion of such

claims which they had located and asked judgment to the effect that he was the owner and lawfully entitled to the possession of the mine locations claimed by him, and prayed that he have his title thereto and possession thereof quieted and confirmed. The appellant, answering such complaint, alleged ownership of said Aluminum group of mining claims and each thereof under mining locations and amendatory locations, copies of which were attached to such answer, admitting that it was a corporation as alleged and was in possession of the premises described in the complaint; that it had filed its application for patent for such Aluminum group as alleged, but denying all other facts alleged in the complaint and praying judgment to the effect that it was the owner and lawfully entitled to the mining claims described in the location notices described and thereto attached, and that it have its title thereto confirmed as against the adverse claim of appellee. To this answer the appellee replied, admitting that on the 12th day of September, A. D. 1908, and for one or more years prior thereto, the land contained in such Aluminum group of placer mining claims, and each of them, was embraced within one or other of the locations claimed by appellant, but denying that the said locations were valid or duly and lawfully made, or that the appellee was, at the time aforesaid, or at any other time, the owner thereof; admitted that the appellee then held all of the said Aluminum group of mining claims under and by virtue of its location notices and by virtue of a pretended doing and performance of the matters and things required by law in order to hold and own the same, but denied that the appellee, by reason, thereof, then owned or had ever owned, as against the appellant, that part of the land embraced in the said Aluminum group of mining claims which was claimed by the appellee in his complaint. By agreement of attorneys of both sides a jury was waived and the case was heard outside of term time by the court, who, on the 17th day of December, 1910, made written findings of fact and conclusions of law and rendered its judgment against the appellant and in favor of the appellee and to the effect that the appellee recover the possession from the appel-

lant of the area in conflict between the adverse claims of the respective parties. The following facts were found by the court: First: That the mining locations claimed by appellant were made on the following dates: Aluminum, original location, December 5, 1900. Hortense, original location, March 31, 1902. And those claimed by appellee were as follows: Agnes, original location, April 7, 1905, Lulu, original location, April 7, 1905. Second: That the appellant failed to perform the annual labor on the Aluminum and Hortense claims for the years 1904 and 1905. Third: That there was no evidence introduced to show whether or not appellant had resumed work upon the Aluminum and Hortense mining claims, before appellee made or attempted to make locations of said Lulu and Agnes mining claims. Fourth: That on the 21st day of November, 1905, appellant applied for patent before the United States Land Office, Las Cruces, for the Aluminum and Hortense mining claims as then located and embracing substantially the area now embraced therein, submitted its proofs, and thereupon the Register and Receiver acted upon and accepted the same; the appellant paid to such officers in purchase of the area embraced therein the sum of————dollars, being the full amount required under the laws of the United States in purchase thereof and received a final receipt in the usual form for such payment. Fifth: That the appellee did not adverse or contest the application of the appellant for such patent before the land office, or bring suit against the appellant for the possession of any portion of such property before the issuance of such final receipt, but, subsequent to the issuance thereof the appellee and others protested before the said land office against the granting of a patent to the appellant on such entry upon various grounds. Sixth: That this final receipt and entry so made of such mining claims was cancelled by decision of the Secretary of the Interior rendered on the 9th day of September, 1908, upon the ground that a portion of the proof submitted with such application i. e. that of the posting of the claim with notice of application, was sworn to outside of the land district in which the claims were situated. Seventh. That on the

——day of May, 1906, subsequent to the time when such final receipt was issued to appellant and previous to the time when the same was cancelled by decision of the Secretary, hereinafter mentioned, the appellee entered into and upon such Hortense and Aluminum mining claims and made relocations of such Lulu and Agnes mining claims and also originally located thereupon the Tip Top, Aurora and Lynch mining claims. Eighth: That there was no evidence introduced to show whether at the time of the location of said Tip Top, Aurora and Lynch mining claims and the relocation of such Lulu and Agnes claims by the appellee aforesaid in the year 1906, the appellant had resumed work on the ground embraced in said claims or either thereof. Ninth: That on the 11th day of September, 1908, after the decision of the Secretary of the Interior, cancelling such final receipt and entry made by appellant, the appellant made amendatory locations of the Aluminum and Hortense mining claims for the purpose of adjusting the land embraced therein to the survey as so made, and so as to make the exterior boundaries of such claims conform to the government sub-divisions.

### OPINION OF THE COURT.

MECHEM, J.—To meet and overcome appellees' proof of the relocation of the Lulu and Agnes claims and the original locations of the Aurora, Tip Top and Lynch claims, made in May, 1906, the appellant introduced its final receipts for the land embraced in the above named claims, issued August 2, 1905, and outstanding in May, 1906. The court held that the said receipts were from their reception void, nullities and of no effect. This holding of the court was based on the action of the Secretary of the Interior affirming a decision of the Commissioner of the General Land Office cancelling the application of appellant for patent upon which application the said receipts were issued by Receiver of the Land Office at Las Cruces. The proceeding in the Land Office is entitled Ex Parte El Paso Brick Company, 37 L. D. 155. The decision of the Secretary of the Interior was rendered September 9, 1908. After reviewing the objections to appel-

lants' application for patent and the authorities in point, the Secretary said: "In view of the foregoing it must be held that the affidavit of posting here in question is fatally defective. The defect is not a mere irregularity which may be cured by the subsequent filing of a properly verified affidavit. The statutory provisions involved are mandatory. Their observance is among the essentials to the jurisdiction of the local officers to entertain the patent proceedings. The requisite statutory proof as to posting not having been heretofore filed, the Register was without authority to direct the publication of the notice or otherwise proceed and the notice, although in fact published and posted, being without the necessary legal basis, was a nullity and ineffectual for any purpose. The patent proceedings, therefore, fall and the entry will be cancelled." Thereafter, on the 24th day of November, 1908, the appellant waived before the Secretary of the Interior its right to make a review of such decision and thereupon such decision and the cancellation of said entry became final and said entry was cancelled on the records of the local land office. The appellants insist that the decision of the lower court was erroneous because as by the issuance of the final receipts, the land embraced in them became segregated from the public domain, it remained so segregated until the date of cancellation of the receipts.

Did the Land Department, by its judgment, holding appellants' application for patent void because the officers of the local land office were without jurisdiction, serve to restore the land to the public domain when the entry was cancelled on the records of the local land office, or was it a decision that the application and the proceedings thereunder were ineffectual for any purpose and therefore of necessity ineffectual to segregate the land applied for from public domain? There can be no question but that the decision of the Land Department is binding in this case. Smelting Co. v. Kemp, 104 U. S. 636; Knight v. U. S. Land Asosciation, 142 U. S. 211. If binding upon the courts of this territory, it is an adjudication that the final receipts offered by appellant were nullities and therefore properly held by the court below not to

in any wise affect the land embraced within them. But counsel for the appellant contend that the decision of the Land Department only went to restoring the land to the public domain when the application for patent was cancelled on the records of the local land office. No case has been cited by counsel for either party exactly in point. No case has been cited involving an application for patent held by the land department to be void because of a lack of jurisdiction in the local land officers to receive it. The appellant cites the following rule of the Land Department: "Before receiving and filing a mineral application for patent, local officers will be particular to see that it includes no land which is embraced in a prior or pending application or patent." It is contended that as long as the application for patent remains uncancelled another may not be received for the same land. That the same rule applies to homestead and pre-emption entries and the decisions of the Land Department and the Federal Courts are all unanimous in holding as to such entries' two things: 1. That the entry segregates the land from the public domain. 2. That even if void as long as it remains uncancelled on the records of the local land office another entry cannot be received. There can be no doubt but that a final receipt for mineral lands issued upon a valid application for patent, vests the purchaser with an equitable title to the land and segregates it from the public domain.

There can be no doubt that even though a final receipt or the equitable title thereby attained may have been the result of fraud and therefore voidable, yet, until avoided, it would be valid and existing. Parsons v. Venske, 164 U. S. 91. Adams v. Polglase, 32 L. D. 477.

But in this case it was held that the application for patent was not merely voidable but void. Counsel for appellant rely upon, among other cases, those of Germania Iron Co. v. James, 89 Fed. 811, and James v. Germania Iron Co., 107 Fed. 605. They say that these decisions are authority for their contention, because holding under a similar rule, to the one above stated, but applying to agricultural entries, that no rights can be acquired to land

embraced in an entry, until cancellation or its equivalent of the entry has occurred. The sole question before the court in those cases is stated to be: "The question it represents is whether strangers to a contest in which a decision of the Secretary of the Interior was filed in his office in Washington to the effect that a certain entry of the land in question was illegal, and should be cancelled, and that the lands should be open to disposal under the public land laws of the United States, had the right to enter that land at Duluth, in the State of Minnesota, the moment that decision was filed in Washington, or had no such right until the local land officers received the decision and had cancelled the former entry on their plats and records where it was made." 89 Fed. 813, 814. The rule of the Land Department plead was "that after a decision of the Secretary had been rendered that a former entry was void and should be cancelled, no subsequent entry of the land could be made until that decision was officially communicated to the local land officers, and a notation of the cancellation was made on their plats and records." Further, the court in its opinion says: "The Secretary of the Interior is an appellate tribunal in these cases, whose court is held, and whose decisions are filed, more than one thousand miles from most of the inferior tribunals in which the parties appear and institute and try their contests. It is according to the almost universal practice of judicial tribunals for the inferior court to take no action, and allow none to be taken in it, until the decision and order of the appellate court has been officially received and recorded. The reasons for such rule in the Land Department are far stronger and more imperative than in ordinary courts of law or equity. It is in the local land office that the rights of the entrymen must be initiated as well as contested. The policy of the government is to afford to the actual settlers, to the preemptors and homesteaders, to those who live on or near the public land to be disposed of, every facility to acquire it without burdensome expense or unnecessary trouble. The very existence of local land offices is the outgrowth of the purpose of Congress to carry to the residents of the

district in which the lands are situated, not only the tribunals in which they may initiate and try their rights, to obtain portions of the public domain, but all the information to enable them to intelligently prefer and establish their claims." And further in the opinion, in 107 Fed. 597, the court said: "Conceding, but not deciding, that the Secretary's decision was a final judgment of the validity of their claims against the United States and against each other, the crucial question in this case still remains unanswered. That question is whether or not, under that decision, the prior entry of Orilie Stram was removed from the land and it was opened to acquisition by strangers to the contest, under the rules and practice of the department before the local land officers cancelled the entry, or were informed on the decision. "None of the parties to this litigation were parties to that contest, and the question is not the finality of that judgment, but the time when after that decision, under the rules and practice of the land department, the land became open to acquisition by strangers. * * * * and by all analogy such a decision of an appellate court has no effect in the inferior tribunal, where rights and contests are initiated until it is received and acted upon by that tribunal. * * * Turning now to the question at issue, the following propositions will be found to be established beyond controversy: The entry of the land by Stram with his half script, whether valid or void, segregated it from the public domain, and appropriated it to private use so that no entry could be made upon it by James or any other applicant before the local land officers received notice of the decision of the Secretary, and cancelled it on their books and plats." Remembering that the rule of the Land Department construed and applied in that case, was: "That after a decision of the Secretary had been rendered that a former entry was void and should be cancelled, no subsequent entry of the land could be made until the decision was officially communicated to the local land officers, and a notation of the cancellation was made on their plats and records." A reading of the decision shows that the question was as to when such decision took effect

McKnight v. Brick Co., 16 N. M. 721.

as to entries of agricultural lands and by reason of the rule, and not by virtue of any law, it was held that as to such entries whether void or valid, until their cancellation was noted on the records of the local land offices, no other entry could be made or any other right initiated.

The rule with regard to mineral applications provides that "before receiving and filing a mineral application for patent, local officers will be particular to see that it includes no land which is embraced in a prior or pending application or patent," and it would seem that as far as receiving a mineral application is concerned this rule would prevent the local land officers from receiving an application for land covered by a prior application until the cancellation of such prior application was noted on their records. And if rights to mineral lands were initiated by entry those cases would be conclusive. But, although a void entry of agricultural lands would by the fact of its pendency prevent another from entering the land, can it be said that a void application for a patent of mineral lands would prevent another from locating the same land? "It is in the local land office that the rights of the entrymen must be initiated as well as contested." Germania Iron Co. v. James, 89 Fed. p. 814. The pendency of a void entry segregates the land from the public domain, for this reason, that until it is cancelled there is no method of procedure whereby anyone may initiate a right to the land because the right is initiated by entry alone and by entry in the local land office. The reason why a decision cancelling entry by the Secretary should not immediately restore the land to the public domain was thus stated by the court in the same case: "In view of this legislation that would indeed be a strange rule, glaringly inconsistent with the evident intention of Congress in establishing local land offices, and with the express provisions of the acts by which they established and developed the land department, which would make the rights of applicants to acquire land more than one thousand miles from Washington depend on action upon a decision filed there, in a contest to which they were strangers, before it was officially communicated to

the officers of the local land office or generally known to the public. Such a rule would enable a sentinel in the office of the Secretary of the Interior to secure for himself and to deprive the citizens of the vicinage of every valuable tract of land restored to the public domain by such a decision, while it would offer patent opportunities for the play of secret and mischievous machinations that might well be avoided. It is the converse of such a rule and practice—it is the rule and practice that the land remained withdrawn from entry or sale until the decision of the Secretary was officially made known to the local land officers, and the notation of the cancellation of the former entry was made on their plats and records,—which the bill alleges was in force when the decision of February 18, 1889, was filed. That practice is consistent with the purpose and provisions of congressional legislation on the subject, gave equal opportunities to all applicants, brought the necessary information to the local land office in time to enable all who intended to apply for the land to obtain and act upon it without expense, and was fair, fitting, just and reasonable.'

By Section 2, Chapter 89, 27 Stat. at Large 140, 6 Fed. Stat. Ann. 30, it is provided: "In all cases where any person has contested, paid the land office fees, and procured the cancellation of any pre-emption, homestead or timber culture entry, he shall be notified by the register of the land office of the district in which such land is situated, of such a cancellation and shall be allowed thirty days from date of such notice to enter said lands." so that the land covered by a void entry remains withdrawn to permit the successful contestant to exercise a preference right of entry.

From the foregoing it will be observed that by entry and by entry alone are rights initiated to agricultural lands. That the existence of one entry, whether void or valid, precludes another entry, and therefore prevents the initiation of a new right. That by the rule and practice of the land department and by statute, entries to agricultural lands are kept in force whether void or not until cancelled on the books of the local land office, making

the initiation of a new right date not from the judgment of the Secretary of the Interior, but from the action of the local land office in entering the cancellation on their records.

It will not require a great deal of reflection to determine that the rule and practice of the land department with respect to agricultural lands, claimed by appellant to have control in this case by analogy, are not applicable to applications for mineral patents. The application for a patent to mineral lands differs from an entry of agricultural lands in many respects, among others, in that the applicant for a mineral patent must have a valid location. The application for patent is not necessary to vest in the claimant title to the claim he possesses. A valid location on the ground followed by recordation of notice of location in the office of the probate clerk of the county in which the claim is situated and compliance with the law as to annual labor are in themselves sufficient to vest in the locator title to the mining claim. He can hold it forever as long as he performs the necessary annual labor. The moment he is in default on account of a failure to perform the annual labor the claim is open to relocation by that fact alone. From this fact arises the rule that the cancellation of a mineral patent does not of itself render the ground embraced by it subject to location. Beals v. Cone, 27 Colo. 473, 62 Pac. 9 and 8. It does not restore it, in other words, to the public domain. The effect of such an adjudication is nothing more than a rejection of the application for patent. The applicant is left with the same rights as if no application had been made. Beals v. Cone, supra.

It would then appear that the rules of the land department, by virtue of which a void entry is effectual not only to withdraw, but to keep withdrawn, land from entry until the cancellation of the void entry was entered on the books of the local land office, should not be applied in a case like this to restrain the natural, legal and necessary effect of a judgment of the Land Department holding application for patent void and a nullity and of no effect as to any proceeding under it. There seems to

be no reason for holding that, although by the judgment of the tribunal invested by the government with jurisdiction of such questions, the action of the local land officers in receiving appellant's application and in acting upon it was decided to be without jurisdiction and, therefore, of no effect whatever, yet, the court below should have held in the face of that decision that the acts of the local officers were merely voidable, not void, so that they did affect the land in question. The various considerations which led to the adoption of the rules and practices of the land department with respect to entries of agricultural land can only be said to be applicable to applications for mineral patents, if at all by analogy, and there seems to be no appreciable analogy between them, at least not to the extent of effectuating a practical modification of the judgment of the land department introduced in evidence in the case at bar. We therefore hold that the decision of the trial court, that the final receipts relied upon by appellant were void, nullities and of no effect, was correct.

The court found that neither the locators of the Hortense or Aluminum claims, or any of the said locators of the appellants, or any of its predecessors, did or performed, or caused to be done or performed, the annual labor and improvements required by law upon or for either of said claims, for or during the year 1904, or for or during the year 1905. The appellee located the Lulu and Agnes claims April 1, 1905. By Section 2315, Compiled Laws of New Mexico of 1897, the owner of an unpatented mining claim may make and file with the county recorder proof of labor under oath, containing certain details, and that such affidavit when so made and filed, shall be prima facie evidence of the facts therein stated. It is further provided, however, as follows: "The failure to make and file such affidavit as herein provided, shall, in any contest, suit or proceeding touching the title of such claim, throw the burden of proof upon the owner or owners of such claim to show that such work has been done according to law." The appellee at the trial introduced in evidence the records of the probate clerk and ex-officio re-

corder of the County of Dona Ana, and from the same was then and there read to the court the affidavit sworn and subscribed by W. F. Robinson, as president of the appellant company, setting forth with particularity the doing of the annual work upon the Hortense and Aluminum claims for the year 1904, but omitting to state "the name or names of the person or persons who performed such work," which the statute requires should be set forth. In tendering such record in evidence, appellee's attorney stated that he did so in order to show that no proper statutory affidavit of such annual labor had ever been filed as provided by the laws of New Mexico. The above was the only proof that was submitted by either side with reference to the question as to whether the annual labor during the year 1904 essential to holding the claim for the year 1905, was done and performed by the appellant on the Hortense and Aluminum claims. It is the position of appellant's counsel that the affidavit was evidence of the facts therein stated, namely: That the labor for the years 1904 and 1905 was done by appellant. The appellant admits that there were two objections to the affidavit; first, that it was not filed within the time required by the act; second, that it did not give the name or names of the person or persons who performed such work, other than that it was done and performed by the appellant. In the case of Upton v. Santa Rita Co., 14 N. M. 96, 89 Pac. 275, a proof of labor was offered and objected to, because the affidavit did not state the amount or character of the actual cost of the work done, nor the names of the persons who actually performed the same, nor the time when it was done. This court in that case held that the proof of labor was properly rejected. It is suggested by counsel for the appellant that this statute by its terms only applies in any contest, suit or proceeding touching the title to the locator's mining claim, and asks if this proceeding is one which involves the title of either party thereto, or if it is one which involves the right of possession by the two claimants only, and that it is well understood that it was decided to be the latter in the case of Upton v. Santa Rita Mining Co., supra. We think

the appellant asks us to put too narrow an interpretation upon this statute and one not justified · by its manifest intent. We think that the proof of annual labor prescribed by this statute would inure to the benefit of the locator filing the same in any kind of action in which it was material to establish the performance of such labor.

Counsel for appellant say that there was no obligation of any character upon the appellee to show that the appellant had not filed such an affidavit; that the statute in substance, is that the burden shall be upon the owner, unless he file such an affidavit, and in order to escape such burden, he must show, therefore, that he has filed such affidavit; and that if, when he offers such affidavit in evidence, the opposing party conceives that it does not comply with the statute, and that therefore it may be excluded, he has then to object to its introduction. In other words, it is the position of counsel for appellant that the appellee should have introduced evidence showing a failure to do the annual labor and if he was able to produce clear and convincing proof of the failure of the appellant to have the annual work 'done, oftentimes a matter of great difficulty, then the appellant would have been put to proof, and then if he offered the affidavit, the appellee could have objected. No court, we take it, would sanction such a waste of time to do an unnecessary thing. The attorney for appellee knew that the appellant had not filed a statutory affidavit. It was his duty to establish the fact first, and to do that he was compelled to put the record in evidence, and the records contained the faulty affidavit. In this case it is true, as counsel for appellant point out, that appellee could have contented himself with showing that no affidavit was filed within the "sixty days from and after the time within which the assessment work required by law to be done upon the claim should have been done and performed," but that does not alter what would be the effect of a faulty affidavit introduced in evidence for the sole purpose of shifting the burden of proof. We think that there was an obligation upon the appellee to show that the appellant

had not filed such an affidavit. The statute is one of convenience; if the owner will not file the affidavit it places upon him the burden of showing that he has complied with the law, such compliance being necessary to the maintenance of his estate, and the facts proving the same being peculiarly within his own knowledge and easier far for him to show their existence, if they did exist, than it would be upon the other party to show their non-existence.

The appellant contends that no matter how defective the affidavit was under the statute, that the facts therein stated were before the court as evidence when the same was introduced in evidence by the appellee, and that such facts, not being disputed by any other evidence, they stand clearly proven. And that the appellee did not attempt to, and could not, limit the effect of such evidence. That the appellee did attempt to limit the effect of the proof of labor is shown by the record which recited that "certified copies of proofs filed in June, 1905, and on the 28th of December, 1906, are offered in evidence, for the purpose of showing, in connection with the testimony of the witness, that there have been no satisfactory proofs of labor filed for any year previous to 1906, the same being marked Exhibits Q and R." The witness mentioned was the officer in custody of the county record. The rule invoked by appellant's counsel is: "As a general rule, although a document is introduced to prove a particular fact or for a particular purpose, it becomes substantive evidence in the cause and may be used by the adverse party for other purposes. Nor, it is held, is a party entitled by an express qualification at the time of introducing a document to restrict its effect as evidence to a definite purpose; but he is compelled to offer it for what it is worth as evidence generally. Vol. 17, Cyc., Sub. Evidence, p. 465. The cases cited to support this rule and the cases cited by appellants' counsel all deal with documents or books introduced in evidence to establish a fact shown by them in favor of the party introducing it. In this case the appellee did not rely upon any fact shown by the proof of labor. He introduced the proofs to show the

non-existence of certain statements which the proofs should have contained. Now, it is quite clear that if the proofs of labor had contained other statements of facts which would have explained or qualified the non-existence of the statements without which the proofs were not evidence for any purpose, the appellant should be allowed the benefit of those statements. In that case the appellant would have been within the rule invoked. The mere statement that the appellant had performed annual labor for the years 1904 and 1905 was not proof, prima facie proof, unless it was further shown by what persons the labor was performed. In other words, it was not a fact shown by the proofs without all the other facts required by law to accompany it.

Another consideration suggests itself in this connection and it is, that the offer of the evidence was not to establish whether appellant had or had not performed the anual labor, but to establish the fact that he had not filed the proof of labor required by the statute. If, therefore, the proof of labor introduced by appellee by one portion only established the fact desired to be shown by appellee, but by another portion explained away that fact or established its opposite, the whole proof or affidavit was in for such purpose. And, in this case, although the appellee in offering the proof of labor for a definite purpose might not be allowed to restrict probative force to that purpose, yet, the appellant would be entitled to use the proofs for what they were "worth as evidence generally." The ex-parte affidavit was worth nothing as evidence generally unless it complied with the statute. Finally, unless the proof of labor was filed within the time required by the statute it was not evidence of anything.

The appellant claims that the original locations of the Lulu and Agnes did not conform to law in that the same were not located with reference to any permanent monument sufficient for their identification, and, because the boundaries thereof did not close or meet and such boundaries could not be traced either from the notices or from any markings on the ground. In disposing of these

objections it is sufficient to say that evidence was introduced at the trial as to these alleged defects in the location notice, and that the court found that the notices did conform to the law. Such a finding will not be disturbed by this court if made on substantial evidence as in this case. Candelario v. Miera, 13 N. M. 360; Seidler v. Lafave, 5 N. M. 44, 20 Pac. 789.

The court below held that it was upon the appellant to show that it had resumed work so as to come within the proviso of the following portion of Section 2324: "And upon a failure to comply with these conditions, the claim or mine upon which said failure occurred shall be open to relocation in the same manner as if no location of the same had been made; provided, that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure and before such location." This is assigned as error. By failure to file the statutory affidavit of proof of labor the burden was on the appellant to prove the performance of the annual labor. This the appellant failed to establish; therefore, the claims in question were open to location, provided, that the appellant had not resumed work upon its claims after failure and before location by appellee. When the burden, by non-compliance with the statute, was placed upon the appellant, it could have been shifted or met by proof either of the annual labor done at the proper time or work done before the location of appellee. The proviso of the statute calls for an affirmative showing by the original locator. As was observed with regard to annual labor, the evidence is peculiarly within the control of the person whose duty it is to do the work. If appellant had in fact resumed work before the date of appellee's locations it could easily have shown it and it was its duty to show it. The claims in this case each covered more than one hundred acres of land. The law required one hundred dollars' worth of work. From this fact it will be seen that impossibility of clear and convincing proof by appellee that apellants had not resumed work on some part of these claims and had not performed one hundred dollars' worth of

Klock v. Mann, 16 N. M. 744.

work. We are satisfied that the judgment of the court below, finding affirmatively in favor of the appellee, was correct on the facts and the law applicable to them. The judgment of the lower court is affirmed.